**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dallas Wayne JONES, Defendant–
Appellant.**

No. 96–5805.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 5, 1997.

Decided Sept. 4, 1997.

Terry M. Cushing, Asst. U.S. Attorney (briefed), Steven S. Reed, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Louisville, KY, for Plaintiff–Appellee.

Douglas E. Robertson (argued and briefed), Bowling Green, KY, for Defendant–Appellant.

Before: KENNEDY, CONTIE, and COLE, Circuit Judges.

CONTIE, Circuit Judge.

Defendant-appellant, Dallas Wayne Jones, appeals his conviction and sentence for manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1) and use of a destructive device during a drug trafficking crime in violation of 18 U.S.C. § 924(c).

## I.

On September 22, 1993, a government strike force was working on a marijuana eradication detail by conducting routine helicopter flights around Tompkinsville, Kentucky. They observed a number of marijuana plants being grown behind a residence. After landing near defendant's home, the officers discovered marijuana plants in a cedar thicket. Five blue plastic laundry baskets lined with plastic bags and filled with potting soil were being used to grow some of the plants, while others were grown in five-gallon buckets or were planted in the ground. Also found in the patch were two one-gallon milk jugs painted brown and green.

After seeing one marijuana plant in the backyard of the residence, officers noticed six one-gallon milk jugs painted brown and green by a water faucet in the back of the house. At this time, two Kentucky state troopers talked to defendant, who stated that he knew nothing about the marijuana growing behind his home or in his backyard. He stated that his fifteen year old son, who lived with his mother in Glasgow, Kentucky, might be growing it.[1]

After determining defendant would not provide any assistance, the officers discovered more marijuana behind the residence, which at that time brought the total number of plants near the home to 23. The officers reboarded the aircraft and took off from the field adjacent to defendant's home. They then spotted more marijuana growing in the

---

1. Defendant's son, Kelvin, actually was 22 or 23 years old.

woods around a nearby field and landed again.

After entering one of the smaller patches of marijuana and cutting approximately eight plants, one of the officers noticed a long, round object, approximately 16 to 18 inches long, taped to a small tree at the edge of the patch. It was covered with plastic and painted green, with black electrical tape affixed to the tree and two green wires coming from the bottom of the object, running into the stalk of a marijuana plant. The officer notified the Kentucky State Police bomb squad. The area was secured, but due to the impending darkness, the officers decided to wait until daylight of the following day to attempt to disarm the device.

During the morning hours of September 23, 1993, a demolitions expert disarmed the device. It was discovered that the item was an explosive device made from a car muffler, black powder, body filler, a brake light switch, and a car battery. After dismantling the bomb, the officer found two pink invoices with defendant's name on them inside the metal tubing.

The officers obtained a state search warrant for defendant's residence and conducted a search the next day. They discovered the following items in defendant's home, garage, and in junk vehicles on the property. An alarm-type device was discovered affixed to the door of the garage. This device was almost identical to the bomb found in the marijuana patch, with the exception of the explosive mechanism, which was replaced by a car horn to let defendant know if anyone opened the garage door. A small quantity of marijuana was found in the residence, and marijuana residue was in the trunk of two of his cars.

Inside defendant's garage, the officers found the following items consistent with the bomb components: (1) pink invoices with defendant's name and address, which were identical to the invoices in the bomb; (2) an empty Pyrodex powder can; (3) a gasket set with one missing gasket, which matched the gasket in the bomb; (4) automobile body putty, which matched the body putty in the bomb; (5) a battery, which was connected to a garage alarm system designed to function like the bomb, except that a horn was substituted for the explosive device; (6) a switch, which was identical to the switch in the bomb; (7) an empty container for green multi-stranded wire; and (8) silicone, which matched the silicone in the bomb. Outside the garage, the officers found ten pieces of pipe that had been sealed at each end with duct tape, consistent with pipe bombs.

On September 5, 1995, a federal grand jury for the Western District of Kentucky returned a two-count indictment charging defendant with manufacturing marijuana in 1993 in violation of 21 U.S.C. § 841(a) and using a bomb during and while manufacturing marijuana in violation of 18 U.S.C. § 924(c). When arresting defendant in 1995, the officers found more marijuana on or near his premises, but defendant was not charged with manufacturing the 15 marijuana plants found in 1995.

On November 7, 1995, defendant appeared initially in U.S. District Court and entered a plea of guilty to Count 2 (bomb count), pursuant to an oral Rule 11 plea agreement. However, defendant was later allowed to withdraw his guilty plea. On January 31, 1996, following a jury trial, defendant was found guilty by the federal jury on both counts of the indictment. The district court sentenced defendant to 60 months' imprisonment on Count 1 (manufacturing marijuana) and to 360 months' imprisonment on Count 2 (using a bomb). The court ordered the sentences to run consecutively for a total sentence of 420 months.

Defendant timely filed an appeal. On appeal, defendant raises three issues: (1) whether there was sufficient evidence to sustain his conviction; (2) whether the district court erroneously excluded from evidence an allegedly exculpatory letter written by his son pursuant to Fed.R.Evid. 804(b); and (3) whether the district court erroneously allowed the jury to watch a video of an explosion created by a replica of the bomb found in the marijuana patch.

## II.

Defendant argues that the United States presented insufficient evidence to prove his

guilt on the marijuana and bomb charges. Defendant contends that the only proof presented connecting him to the crime was that the destructive device was probably made in his garage. Defendant argues that because the theory of the defense was that defendant's son was the culprit, the proof that the destructive device was made in defendant's garage was as consistent with innocence as with guilt, and therefore defendant could not be convicted. We do not agree.

We address a sufficiency of the evidence challenge under the following standard of review: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Martin,* 897 F.2d 1368, 1373 (6th Cir.1990). Circumstantial evidence, standing alone, can sustain a guilty verdict, and the circumstantial evidence need not remove every reasonable hypothesis except that of guilt. *United States v. Stone,* 748 F.2d 361, 362 (6th Cir.1984).

■ In the present case, we believe the evidence was sufficient for a jury to return a verdict of guilty on both counts. The marijuana was grown in the field next to defendant's residence, and there was a trail in the marijuana field which led directly to his backyard. There were plastic one-gallon milk jugs, painted brown and green, located both in the marijuana field and at the rear of defendant's house. The officers found a marijuana plant growing in the middle of defendant's backyard, marijuana in his kitchen, and marijuana residue in the trunk of two of his cars. We believe this is sufficient circumstantial evidence to indicate that defendant grew the marijuana.

■ The evidence that indicated defendant was the maker of the bomb was as follows. The bomb, which was located in the marijuana field next to defendant's house and automotive garage, was made from an automobile tail pipe. The bomb contained pink invoices with defendant's name and address, which were identical to pink invoices discovered in his garage. The bomb contained Pyrodex powder in the explosive, and there was an empty Pyrodex container in his garage. The bomb was connected with green multi-stranded wire. Inside defendant's garage, the officers found an empty container for green multi-stranded wire. The automobile body putty used to construct the bomb matched that found in defendant's garage. Also, the switch in the bomb was identical to one in the garage, as was the silicone. The gasket in the bomb matched a gasket missing from a gasket set found in defendant's garage. The bomb was constructed to operate identically to the alarm system in defendant's garage, except that in the garage, a horn was substituted for the explosive device. Finally, outside defendant's garage, the officers found ten pieces of pipe, which had been sealed on each end with duct tape, consistent with pipe bombs.

■ At trial, the jury heard defendant testify that he was innocent and that his son was the person guilty of growing the marijuana and making the bomb. Evidently, the jury did not find defendant to be credible. Issues of credibility are for the jury to determine. *Boutros v. Canton Regional Transit Authority,* 997 F.2d 198, 202 (6th Cir.1993); *United States v. Evans,* 883 F.2d 496, 501 (6th Cir.1989). To conclude, the jury had sufficient evidence to find defendant guilty of manufacturing marijuana and using a bomb in relation to this offense. The district court is affirmed on this issue.

### III.

■ We must next decide whether the district court abused its discretion when it denied defendant's motion to admit into evidence a letter written on the eve of trial by his son, Kelvin, purporting to take responsibility for certain incriminating acts.

A few weeks before his trial, defendant wrote two letters to his son, Kelvin. In the first letter, defendant informed Kelvin that his lawyer might come to see him and, if so, for Kelvin to deny any knowledge about who made the bomb. The letter stated that Kelvin should say that defendant had nothing to do with the bomb. Defendant also directed Kelvin to tell the lawyer that two of the laundry baskets with marijuana, which the

officers had found when defendant was arrested in 1995, belonged to Kelvin.[2] Defendant told Kelvin to say that he grew the single marijuana plant found in defendant's backyard in 1993, and that the marijuana found in one of the cars in 1993 belonged to Kelvin. Defendant then stated, "That if we bring you to my trial, you will not get in any trouble. I will write you back and, or my lawyer will tell you what to say before the trial."

Defendant wrote a second letter to his son, telling him what to say at defendant's trial— that the two baskets of marijuana found in 1995 belonged to him, that Kelvin built the garage alarm system after somebody tried to break into defendant's garage in 1992, and that Kelvin could get into his father's house or garage even if they were locked. Defendant told Kelvin to say that his father had no money, stayed broke, and was in a lot of debt. Finally, defendant directed Kelvin as follows:

> We are going to have to make like you ain't just trying to help me. They can't do anything to you for anything in the past, so you tell them that in 1991—'90, '91, '92 you was on cocaine and you stole from me and anything, but not pot. If they ask you say you took that Monte Carlo in July 1993 ... to make it look like someone else.... We have to make it look like you are a bad boy.

In addition, defendant's attorney met with Kelvin and informed him that he might be able to obtain immunity for Kelvin if Kelvin were to take responsibility for the acts charged against his father. To conclude, defendant wrote two letters to his son a few weeks before trial, directing his son what to tell his lawyer and what to say at trial if called to testify. At trial, defendant identified the two letters and admitted that he had written both of them. The district court granted the United States' motion to admit the letters into evidence with no objection from defendant.

The United States then called Kelvin as a witness, but he invoked the Fifth Amendment and refused to testify. Defendant moved to introduce into evidence a letter, which he had received from Kelvin about a week before trial, in which Kelvin takes responsibility for certain incriminating acts. The United States objected, claiming that the letter was hearsay. The United States argued that there was no way to authenticate the letter. It was not a self-authenticated document under the Federal Rules of Evidence, and Kelvin refused to testify about it. Therefore, it was impossible for the United States' attorney to cross-examine Kelvin about his statements in the letter, making the letter hearsay.

Defendant's attorney argued that the letter could be admitted as a hearsay exception pursuant to Federal Rule of Evidence 804(b)(3) as a statement against interest. The rule defines a "statement against interest" as follows:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In the present case, the district court found that there was insufficient corroboration to indicate the trustworthiness of the letter.

 This court reviews the district court's evidentiary ruling under Rule 804(b)(3) under an abuse of discretion standard. *United States v. Noel,* 938 F.2d 685, 688 (6th Cir.1991). The district court did not abuse its discretion by finding that there were insufficient corroborating circumstances to indicate the trustworthiness of Kelvin's statements in the letter. The factors to be

---

**2.** Contrary to the implication in defendant's letter to Kelvin, defendant was not charged with possessing these two baskets of marijuana, which had been found upon his arrest in 1995. The charges against defendant stemmed only from the marijuana found on and near his premises in 1993.

considered in determining whether a hearsay statement should be admitted under Rule 804(b)(3) in a criminal case are as follows. First, the declarant must be unavailable. Second, from the perspective of the average, reasonable person, the statement must have been truly averse to the declarant's penal interest, considering when it was made. Finally, corroborating circumstances must clearly establish the trustworthiness of the statement. *Id.; United States v. Mac-Donald,* 688 F.2d 224, 232–33 (4th Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983).

■ In the present case, Kelvin, the declarant, was unavailable as he refused to testify, invoking his Fifth Amendment right against self-incrimination. In regard to the second factor, even if Kelvin's letter contained statements "tending to expose [him] to criminal liability" and even though the letter was "offered to exculpate" defendant, the allegedly exculpatory statements in the letter were "not admissible unless the corroborating circumstances clearly indicate[d] the trustworthiness of the statements." Fed. R.Evid. 804(b)(3). Whether or not the statements in the letter are truly against Kelvin's penal interest becomes irrelevant if the surrounding circumstances do not indicate that the statements are trustworthy. Trustworthiness is a crucial factor in determining the admissibility of hearsay statements under the exception articulated in Fed.R.Evid. 804(b)(3).

In regard to trustworthiness, this court has found that statements from a declarant attempting to exculpate a defendant with whom the declarant has a close relationship must be closely scrutinized. *United States v. Noel,* 938 F.2d at 688. *See also United States v. Silverstein,* 732 F.2d 1338, 1346 (7th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). The father-son relationship between Kelvin, the declarant, and Jones, the defendant, is such a relationship. The timing of the letter is also suspect. Kelvin wrote the allegedly exculpatory letter to defendant on the eve of defendant's trial, two years after the marijuana and bomb had been found. The letter was sent in response to two letters defendant had written to Kelvin, specifically directing Kelvin what to say to the lawyer and at trial. In addition, the letter was written after a visit from defendant's attorney, who indicated to Kelvin that he could get immunity for him. Also, Kelvin had been assured by defendant that he would not suffer any further criminal consequences if he took responsibility for his father's acts. Finally, and most important, the United States informed the court that a special agent from the Bureau of Alcohol, Tobacco, and Firearms had met with Kelvin and Kelvin's attorney on Saturday, January 27, 1996, a few days before trial. Under oath and with his counsel present, Kelvin denied responsibility for growing the marijuana plants found on or near defendant's premises and for planting the bomb. Thus, any exculpatory statements in the letter were contradicted by Kelvin's testimony under oath to the BATF.

Defendant alleges that it was error for the district court to attempt to determine if the statements in the letter were truthful as it is for the jury to decide issues of credibility. We do not agree. Rule 804(b)(3) specifically states that a "statement against penal interest," offered to exculpate the accused, is not admissible unless corroborating circumstances clearly indicate the *trustworthiness* of the statements. In the present case, the district court made the proper inquiries concluding that defendant failed to establish any corroborating circumstances supporting the trustworthiness of Kelvin's statements in the letter. Instead, the surrounding circumstances indicated that the letter was not trustworthy. Therefore, the district court did not abuse its discretion when it denied defendant's motion to admit Kelvin's hearsay letter into evidence pursuant to Fed.R.Evid. 804(b)(3). The district court is affirmed on this issue.

### IV.

■ Defendant also argues that the district court abused its discretion when it permitted the United States to show a videotaped explosion of the bomb that had been built as a replica of the bomb discovered in the marijuana field. Defendant argues that the videotape was unduly prejudicial and unnecessary for the jury to determine whether the device found in the marijuana field was a

destructive device within the meaning of the statute.

The United States argues that this court has previously allowed a videotape of a similar explosion. In *United States v. Metzger*, 778 F.2d 1195 (6th Cir.1985), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986), the prosecution showed a videotape of an explosion to the jury in a case involving sticks of dynamite. This court held that the videotape could be admitted only if the test was conducted under conditions substantially similar to those of the event. *Id.* at 1204. The court noted that the substantially similar standard is a flexible one that does not require all variables to be controlled. *Id.*

We find that in the present case, the showing of the videotape met the standards articulated by this court in *Metzger*. At trial, a witness, Henderson, testified as a bomb expert for the United States. He had extensive formal education and training and twenty-four years of bomb-building experience, nine years of which were spent with the United States Army bomb squad on a tour in Vietnam. To verify that the device found in the marijuana field was a bomb, Henderson built a replica device. He explained to the jury in detail how he constructed the replica bomb so that it would be identical to the bomb found in the marijuana field. He then detonated the replica and recorded the explosion on videotape. After recording the explosion, Henderson took the video camera and walked to Styrofoam silhouettes that had been placed nearby, recording how they had been hit by shrapnel and gravel.

The United States moved to show the videotape to the jury, and defendant objected because the tape showed how shrapnel and gravel hit the Styrofoam silhouettes, which, defendant argued, was unduly prejudicial. The district court watched the video in the jury's absence and then permitted the United States to show only the explosion, but not the silhouettes hit by the shrapnel and gravel. As soon as the explosion occurred, the video was turned off.

Defendant's argument that it was unnecessary for the jury to determine that the device was a bomb has no merit. In Count 2 of the indictment, defendant was charged with using a destructive device in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). In 18 U.S.C. § 921(a)(4), a destructive device is defined as "any explosive," including "a bomb." The statute further provides that "[t]he term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling ... or similar device...." 18 U.S.C. § 921(a)(4).

In *United States v. Hedgcorth*, 873 F.2d 1307 (9th Cir.), *cert. denied*, 493 U.S. 857, 110 S.Ct. 164, 107 L.Ed.2d 122 (1989), the issue was whether a reasonable jury could find that napalm firebombs were destructive devices within the meaning of 18 U.S.C. § 921(a)(4). *Id.* at 1311. The *Hedgcorth* court found that the nature and characteristics of the firebombs supported the jury's conclusion that they were designed for use as weapons, not as signaling devices. *Id.* at 1312. Similarly, in the present case, the videotaped explosion of the replica bomb served as evidence that the device attached to the marijuana plant was, in fact, an explosive device, namely a bomb, as defined in 18 U.S.C. § 921(a)(4), and was not a signaling device.

To conclude, we find that whether the device found in the marijuana field was a bomb designed as a weapon, and thus "a destructive device" within the meaning of the statute, was not irrelevant. The videotaped explosion of the replica bomb served as evidence to establish that the bomb was a destructive device. Therefore, the district court did not abuse its discretion when it permitted the United States to show a videotaped explosion of the bomb. The district court correctly refused to allow the jury to see how the shrapnel and gravel affected the silhouettes, but allowed only the viewing of the explosion itself. The district court is affirmed on this issue.

V.

The conviction and sentence of defendant by the district court is hereby **AFFIRMED.**