UNITED STATES of America,
Plaintiff–Appellee,

v.

Burton Bradley CHARLES,
Defendant–Appellant.

No. 88–6078.

United States Court of Appeals,
Fifth Circuit.

Aug. 31, 1989.

Charles B. Robinson, Sherman, Tex., court appointed, for defendant-appellant.

H.S. Garcia, Asst. U.S. Atty., Sherman, Tex., for plaintiff-appellee.

Before GARZA, REAVLEY and POLITZ, Circuit Judges.

GARZA, Circuit Judge:

Defendant Burton Bradley Charles ("Charles") was convicted by a jury on September 13, 1988, on two counts of federal firearms violations. The district court denied Charles' motions to dismiss the charges pursuant to the Speedy Trial Act, to suppress evidence because of a defect in the issuance of a search warrant, and to grant a directed verdict based on lack of evidence. From these denials, Charles appeals. Because we find Charles' contentions to be without merit, we affirm the decision of the district court.

On February 20, 1988, pursuant to a state search warrant, Charles was arrested by members of the Collin County Sheriff's Department on state drug charges. His arrest occurred during a raid on a compound thought to be the base of an extended drug circle; five other suspects were arrested in the same raid. Because the Collin County officials suspected they might find weapons and explosives in the compound, they asked Bureau of Alcohol, Tobacco & Firearms ("ATF") agent Dan Curtis to participate in the raid.

On March 3, 1988, a state district judge appointed Charles Sandoval to represent Charles, but Sandoval withdrew as counsel on March 28, 1988, after he discovered no

state charges would be filed against Charles. Sandoval did no further investigation for Charles. After losing his appointed counsel, Charles allegedly filed an application for Writ of Habeas Corpus; we have no evidence concerning that application in the record before us. But in any event, Charles remained in the Collin County jail for four months, and no state charges were ever filed against him.

On June 17, 1988, agent Curtis executed an affidavit setting out information concerning illegal firearms found in the February 20 raid, and on the basis of that affidavit, Charles was arrested by Federal authorities on June 20, 1988. A grand jury indicted Charles on July 15, 1988.

Charles moved to have the charges against him dismissed on the grounds that his lengthy confinement before indictment violated the Speedy Trial Act, 18 U.S.C. 3161 *et seq.* He also moved to suppress evidence found in the February 20 raid, as he alleged the raid and its attendant search were conducted without a warrant. The district court heard evidence on both motions, and denied both. Charles then stood trial and a jury found him guilty of both firearms counts alleged in his indictment. It is from the denial of his motions that Charles appeals.

*Speedy Trial*

■ Section 3161(b) of the Speedy Trial Act provides:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges....

It is clear that this section is triggered only by federal action, by bringing federal charges. *U.S. v. Janik,* 723 F.2d 537, 542 (7th Cir.1985). "An arrest made by a state officer, even if state and federal officers are cooperating at the time, does not start the running of the thirty day time period." *U.S. v. Taylor,* 814 F.2d 172, 175 (5th Cir.)

*cert. denied,* 484 U.S. 865, 108 S.Ct. 186, 98 L.Ed.2d 138 (1987); *U.S. v. Johnson,* 815 F.2d 309, 312 (5th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1987); *U.S. v. Iaquinta,* 674 F.2d 260, 264 (4th Cir.1982). So only if Charles' arrest was a federal arrest would the Speedy Trial time period begin to run.

Charles complains now that his arrest on February 20, 1988, triggered 3161(b)'s thirty-day clock, and the charges against him should be dismissed because he was not indicted until July 15, 1988: more than thirty days after his arrest. But Charles' argument must fail, because his arrest was not a federal one and so did not trigger the Speedy Trial Act and the thirty-day time limit. Federal ATF agent Curtis did participate, to some extent, in Charles' arrest, but his mere presence at the raid was not sufficient to transform the state arrest into a federal one.[1]

The Collin County officials wrongfully held Charles for four months. Though they may have thought Charles was to be charged by federal authorities, and for that reason detained him, the fact remains that Charles was not under a federal detainer; he was not the subject of a federal complaint; there were no federal charges pending against him. The district court correctly described Charles' wrongful incarceration as "an unusual set of circumstances and an unfortunate set of circumstances." But Collin County's wrongful actions simply did not trigger the Speedy Trial Act, and we therefore affirm the district court's denial of Charles' motion to dismiss.

*Search Warrant*

■ State Magistrate Curt Henderson issued a search warrant for the Charles compound at 6:03 p.m. on February 20. Charles complains now that evidence found in the raid should have been suppressed because the raid began before issuance of the search warrant, or, alternatively, that the officers did not have the search warrant in hand during the raid. As for Charles' first contention, the district court

---

**1.** In his June 17 affidavit, Agent Curtis stated that he had arrested Charles. In later testimony at Charles' jury trial, agent Curtis agreed that his affidavit was in error on that point, and that he did not arrest Charles. We find his trial testimony convincing on this issue.

heard evidence and found that the raid began sometime *after* the magistrate issued the valid search warrant, and we affirm the finding on that point.

As for Charles' second complaint, it is true that the Federal Rules of Criminal procedure, Rule 41(d), provide that the "officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant ... or shall leave the copy ... at the place from which the property was taken." And it is true that the officers who raided Charles' compound received word about the warrant's issuance over the police radio and did not have in hand a copy of the warrant to present. But it is also true that "[v]iolations of Rule 41(d) are essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice or non-compliance with the rule was intentional or in bad faith." *U.S. v. Marx*, 635 F.2d 436, 442 (5th Cir.1981); *U.S. v. Bonner*, 808 F.2d 864, 869 (1st Cir.), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987). In *Marx*, as here, the defendant moved to suppress evidence found in a search made after issuance of a warrant, but a copy of the warrant was not physicially present at the time and location of the search. *Marx*, 635 F.2d at 440. We held there that the search was not invalid absent a showing that, because of the technical violation of Rule 41(d), the defendant "was subjected to a search that might not have occurred or would not have been so abrasive had the rule been followed." *Id.* at p. 441. As there has been no such showing here, we affirm the trial court's denial of Charles' motion to suppress.

*Sufficiency of the Evidence*

 During the February 20 raid, officers found three pipe bombs, tubes about ten inches in length filled with explosive components, and each having an igniter—or fuse—attached. The grand jury indicted Charles for illegally possessing those bombs in violation of 26 U.S.C. 5845(a) and (f), and 5861(d). Charles complains now that the district court erred in denying his motion for acquittal on that count as there was insufficient evidence to find that he was in possession of a "destructive device" as that term is defined in 26 U.S.C. 5845(a) and (f). Charles himself testified that the tubes were not weapons, but instead were "percussion devices" designed to detonate underwater and stun fish. Because 5845(f)(3) exempts from the definition of "destructive device" any device not designed for use as a weapon, Charles contends his "percussion device" is exempted and he should be acquitted.

Evidence is sufficient if, viewing the evidence in the light most favorable to the government, a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *U.S. v. Trevino*, 720 F.2d 395, 398 (5th Cir.1983), citing *Glasser v. U.S.*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Officer Anthony Medrano, a bomb technician with the Dallas Police Department Explosive Ordinance Unit, testified at Charles' trial that the so-called "percussion devices" were, in fact, improvised grenades. He detonated the devices, which exploded loudly and released shrapnel as a grenade would have done. Because we find that a reasonable trier of fact could have found from the evidence that the devices were "destructive devices" beyond a reasonable doubt, we affirm the district court's denial of Charles' motion for acquittal.

For the foregoing reasons, the decision of the trial court is in all things AFFIRMED.