**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel Tyrone MCNEIL; John D. Hatcher; Jarrett Lamont Henderson, Defendants–Appellants.**

**Nos. 02–1096, 02–1757, 03–1109.**

United States Court of Appeals,
Sixth Circuit.

July 1, 2004.

Jennifer J. Peregord, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

Lawrence J. Bunting, Troy, MI, for Defendant–Appellant Daniel Tyrone McNeil.

Margaret Raben, Gurewitz & Raben, Detroit, MI, for Defendant–Appellant John D. Hatcher.

Joan E. Morgan, Sylvan Lake, MI, for Defendant–Appellant Jarrett Lamont Henderson.

Before: RYAN, DAUGHTREY, and CLAY, Circuit Judges.

RYAN, Circuit Judge.

The defendants, Daniel Tyrone McNeil, John D. Hatcher, and Jarrett Lamont Henderson, appeal their convictions and sentences for bank robbery, or aiding and abetting the same, in violation of 18 U.S.C. §§ 2 and 2113(a); and for brandishing firearms during and in relation to a crime of violence, or aiding and abetting the same, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(i) and (ii).

McNeil and Hatcher appeal their convictions and sentences for possessing a destructive device during and in relation to a crime of violence, or aiding and abetting the same in violation of 18 U.S.C. §§ 2, 924(c)(1)(A), and 924(c)(1)(B)(ii). In this appeal, the defendants raise several issues, including alleged trial errors, the sufficiency of the evidence, and alleged errors related to sentencing. Having considered each assignment of error carefully, we conclude that the only claim with any merit is that the district court committed plain error by convicting and sentencing McNeil and Hatcher for multiple violations of § 924(c) when only a single predicate offense of bank robbery was alleged in the indictment. For the following reasons, we AFFIRM the defendants' convictions. However, we VACATE McNeil's and Hatcher's sentences and REMAND their cases for resentencing. Henderson's sentence is AFFIRMED.

I.

On April 19, 2001, three armed men, who were later identified as McNeil, Hatcher, and an accomplice named Frederick McCloud, entered the First Federal of Michigan bank branch in Sterling Heights, Michigan. A fourth man, later identified as Henderson, waited outside the bank in the driver's seat of a car. McNeil and Hatcher subdued the bank's employees while McCloud ordered bank teller Sherry French to hand over the bank's money and to put it into a black duffel bag. Meanwhile, Hatcher placed a black cylindrical device on the floor in front of branch manager John Johnson and assistant manager Danielle Ford. He announced that the device was a bomb, and that if anyone moved, it would explode and kill them. Before the three men left the bank, they herded the employees into a vault. Hatcher told the employees: "I'm going to set the bomb, ... I'm going to close the door, and if you guys come out the bomb will go off and kill you." The three men left the bank with over $43,000.

McNeil, Hatcher, and McCloud jumped into the waiting car with Henderson and sped off with police in pursuit. After a short chase, the car crashed into a ditch and the four men continued to flee by foot, discarding clothes, guns, and money as they ran. Within moments, police appre-

hended McNeil, Hatcher, and Henderson. McCloud was captured later. At the scene of the chase, police recovered a black duffel bag filled with U.S. currency, three handguns, and various items of clothing, including a mask, a hat, bandanas, and gloves.

Back at the bank, Sergeant Steven Morrison, an explosives expert from the U.S. Army Bomb Squad, disarmed the pipe bomb left there by Hatcher. In order to disarm the bomb, Morrison shot it with a steel slug, knocking off one of the end caps and igniting the contents of the pipe. Based on the contents discharged from the bomb and the damage it caused, Morrison later testified that the bomb was, in fact, an explosive device and that it could have caused serious injury if it had exploded.

A grand jury returned a five-count indictment against the defendants. McCloud pleaded guilty to all four charges against him. McNeil, Hatcher, and Henderson were convicted of bank robbery or aiding and abetting the same, and brandishing a firearm during a crime of violence or aiding and abetting the same. McNeil and Hatcher were also convicted of possessing a destructive device in furtherance of a crime of violence, or aiding and abetting the same. Finally, Hatcher was convicted of being a felon in possession of a firearm.

McNeil and Hatcher were each sentenced to five years for the bank robbery, seven years for brandishing a firearm, and 30 years for possessing a destructive device. Henderson was sentenced to 6–1/2 years for the bank robbery and seven years for brandishing a firearm. The defendants appealed both their convictions and sentences.

## II.

■ The defendants' first assignment of error is that the district court empaneled a juror who had admitted a bias against them. The alleged admission occurred during *voir dire,* when Hatcher's counsel engaged in a dialogue with the jury pool about potential bias.

The Sixth Amendment right to trial by jury "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). If it is revealed during *voir dire* that a venireman is biased against the defendant, the venireman must be dismissed. *Hughes v. United States,* 258 F.3d 453, 459 (6th Cir.2001). Bias can be ascertained either from a juror's express admission or, as is more often the case, from circumstantial evidence. *Id.* A district court's determination that a venireman is not biased is entitled to deference because the district court is uniquely situated to judge the venireman's demeanor and credibility. *Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

Because the defendants did not object at trial, we review for plain error only. *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Plain error exists if (1) there was an error, (2) the error was plain, and (3) the error affected substantial rights. *Id.* at 732–34. If these three factors are present, an appellate court may notice a forfeited error, but only "if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736 (internal quotation marks and citation omitted).

Having reviewed the transcript and the venireman's statement in context, we are satisfied that there was no admission of bias at *voir dire.* Nor is there any other evidence, direct or circumstantial, that any member of the jury was biased against the defendants. Accordingly, the district

court did not commit plain error by empaneling the jury.

## III.

■ Next, the defendants claim that various statements made by the prosecutor during his closing arguments were improper. This court applies a two-step approach in reviewing prosecutorial remarks. *United States v. Carroll,* 26 F.3d 1380, 1385 (6th Cir.1994). First, we determine whether the remarks were improper. *Id.* Second, we consider whether the impropriety constituted reversible error. *Id.* In order to determine whether the impropriety amounted to reversible error, we ask the following four questions, known as the *Leon* test:

(1) whether the remarks tended to mislead the jury or to prejudice the accused;

(2) whether they were isolated or extensive;

(3) whether they were deliberately or accidentally placed before the jury; and

(4) the strength of the evidence against the accused.

*Id.* (construing *United States v. Leon,* 534 F.2d 667, 678–83 (6th Cir.1976), *overruled on other grounds, United States v. Stone,* 748 F.2d 361, 363 (6th Cir.1984)). "The first *[Leon]* factor includes consideration of whether the trial judge gave an appropriate cautionary instruction to the jury." *Id.*

The first three *Leon* factors help a reviewing court determine whether the prosecutor's remarks were "flagrant." If the remarks were not flagrant, a reviewing court should grant a new trial only if:

(1) proof of defendant's guilt is not overwhelming, *and*

(2) defense counsel objected, *and*

(3) the trial court failed to cure the error with an admonishment to the jury.

*Id.* at 1385–86 (quoting *United States v. Bess,* 593 F.2d 749, 757 (6th Cir.1979)). These final three factors are known as the *Bess* test.

We have carefully read the transcript of the prosecutor's closing arguments and we conclude that none of his statements constituted impropriety amounting to reversible error.

## IV.

■ The next issue we must consider is raised by Henderson, the getaway driver, who claims that there was insufficient evidence to support the jury's verdict that he was guilty of aiding and abetting his coconspirators in brandishing a firearm during and in relation to a crime of violence. Because Henderson did not move for acquittal on this charge, "appellate review is limited to determining whether there was a manifest miscarriage of justice." *United States v. Khalil,* 279 F.3d 358, 368 (6th Cir.2002) (internal quotation marks and citation omitted). Under this test, "a jury verdict must be upheld if, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). In assessing the sufficiency of the evidence, an appellate court must "give[ ] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[C]ircumstantial evidence alone can sustain a guilty verdict and ... to do so, circumstantial evidence need *not* remove every reasonable hypoth-

esis except that of guilt." *United States v. Stone*, 748 F.2d 361, 362 (6th Cir.1984).

In order to establish that a defendant aided and abetted the use of a firearm during and in relation to a crime of violence, "[t]he government must prove that the defendant, as the accomplice, associated and participated in the use of the firearm in connection with the underlying ... crime [of violence]." *Rattigan v. United States*, 151 F.3d 551, 558 (6th Cir.1998). The government must show that the defendant was an active participant in the crime and that the crime would not have occurred in his absence. *Id.* "This can be satisfied if the accomplice knows that the principal is armed and acts with the intent to assist or influence the commission of the underlying predicate crime." *Id.*

We hold that there was sufficient evidence to support the jury's verdict. There was evidence that Henderson talked to his accomplices by phone several times in the days and hours leading up to the robbery. On the day of the robbery he drove to the bank with his accomplices, each of whom was armed with a weapon that was not easily concealed. Moreover, Hatcher admitted to police that he left his gun in the getaway car with Henderson during the robbery. After the robbery, when McNeil, Hatcher, and McCloud returned to the car, Henderson drove them away from the scene of the crime in a vain attempt to elude police. In addition, witnesses testified that during the robbery they saw one of the robbers holding a walkie talkie in his hand. After the chase, police found two walkie talkies in or near the car. In light of this circumstantial evidence the jury could have reasonably inferred that Henderson knew his accomplices were armed and that he acted with the intent to assist or influence the commission of the bank robbery.

## V.

■ Henderson next alleges that the district court erred by denying him a decrease in his offense level for playing a minor or minimal role in the bank robbery. We review the denial of a "minor participant" reduction for clear error. *United States v. Perry*, 908 F.2d 56, 58 (6th Cir. 1990).

The sentencing guidelines provide the following with respect to a "minor participant" reduction:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2. A reduction in the defendant's offense level is warranted if the defendant "plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (n.3). "The culpability determination is heavily dependent upon the facts, ... and the defendant has the burden of proving mitigating factors by a preponderance of the evidence." *Perry*, 908 F.2d at 58 (internal quotation marks and citation omitted).

Other than quoting from the sentencing guidelines and a few cases, Henderson does not point to any mitigating factors that would warrant a reduction for playing a minor or minimal role in the robbery. At sentencing, Henderson argued that he was entitled to a role reduction because he had not participated in other bank robberies allegedly committed by Hatcher and McCloud. However, as the district court

pointed out, Henderson was charged with participating in the bank robbery at Sterling Heights and none other, and, therefore, he was not entitled to a role reduction for not participating in alleged robberies committed elsewhere.

Henderson's only other argument at sentencing was that he was a minor or minimal participant in the bank robbery because he was merely the getaway driver. However, as the district court concluded, the evidence showed that Henderson communicated extensively with his accomplices in the days and hours leading up to the robbery, that he remained in constant contact with his accomplices by walkie talkie during the robbery, and that he served a significant role in the robbery by acting as the getaway driver and lookout. Henderson has failed to show, by a preponderance of the evidence, that he "play[ed] a part in committing the offense that ma[d]e[ ] him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (n.3).

## VI.

■ We next consider whether the district court erred in admitting statements that Hatcher made to Detective Glen French without having received a contemporaneous warning under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When considering the denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions *de novo. United States v. Weekley,* 130 F.3d 747, 750 (6th Cir.1997). The evidence must be reviewed, however, "in the light most likely to support the district court's decision." *United States v. Navarro–Camacho,* 186 F.3d 701, 705 (6th Cir.1999) (internal quotation marks and citation omitted).

At issue here is whether the Constitution requires that, despite the warnings given to Hatcher three times on the day of his arrest, Detective French was obligated to restate the *Miranda* warning before questioning Hatcher the following day. When considering whether the passage of time or a change in questioners requires the police to readvise a defendant of his *Miranda* rights, we have rejected a *per se* rule in favor of a totality of the circumstances test. *Weekley,* 130 F.3d at 751. The record reveals that Hatcher received three adequate *Miranda* warnings after his arrest; that he had signed a waiver of rights form; and that less than 24 hours had passed between his last *Miranda* warning and his conversation with Detective French. The record contains no evidence that anything occurred during that period that would have nullified or in any way diminished Hatcher's understanding of the warnings given him the previous day. There is no evidence that anyone coerced Hatcher or promised him leniency or in any fashion interfered with his right to request counsel or to remain silent. There is also no merit to Hatcher's claim that Detective French's questions concerned an entirely new subject matter requiring the *Miranda* warnings to be reissued. Detective French's questions were limited to the matter of the bomb, a subject Hatcher had already discussed with Agent Jeff Eberle the day before, after having signed a waiver of rights form.

Even if Hatcher's statements were obtained in violation of his *Miranda* rights, which we hold is not the case, their admission at trial was harmless because they were essentially cumulative of statements that he had already made to Agent Eberle. A statement admitted in violation of a defendant's *Miranda* rights is subject to harmless error review. *United States v. Wolf,* 879 F.2d 1320, 1323 (6th Cir.1989). An error is harmless if it is clear beyond a

reasonable doubt that the jury would have returned a verdict of guilty absent the improperly admitted confession. *Id.* at 1324. On April 19, Hatcher confessed to Agent Eberle that he had constructed the bomb, brought it into the bank, and threatened the bank employees with it. This admission, in addition to the testimony of eyewitnesses and experts, as well as surveillance photos from the bank, make it clear, beyond a reasonable doubt, that the jury would have returned a verdict of guilty even without the testimony of Detective French.

## VII.

■ The next assignment of error brought by McNeil and Hatcher is the claim that there was insufficient evidence to support the jury's verdict that the two possessed a destructive device during the bank robbery or aided and abetted the same. Because McNeil and Hatcher did not move for acquittal on the charge of possessing a destructive device, or aiding and abetting the same, "appellate review is limited to determining whether there was a manifest miscarriage of justice." *Khalil,* 279 F.3d at 368 (internal quotation marks and citation omitted). Under this test, "a jury verdict must be upheld if, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). In assessing the sufficiency of the evidence, we must "give[ ] full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319.

The term "destructive device" means—

(A) any explosive, incendiary, or poison gas—

(i) bomb,

(ii) grenade,

(iii) rocket having a propellant charge of more than four ounces,

(iv) missile having an explosive or incendiary charge of more than one-quarter ounce,

(v) mine, or

(vi) device similar to any of the devices described in the preceding clauses;

. . . .

(C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) . . . and from which a destructive device may be readily assembled.

18 U.S.C. § 921(a)(4)(A). Section 921(a)(4) does "not demand that the device operate as initially intended, but that it [is] enough that it be readily convertible into a destructive device[.]" *United States v. Langan,* 263 F.3d 613, 626 (6th Cir.2001). A "pipe bomb" constitutes a "destructive device" if it possesses "an explosive main charge, a container, and a method of initiation." *Id.*

We conclude that there was sufficient evidence to support the jury's verdict that the pipe bomb found at the bank was a destructive device as that term is defined in § 921(a)(4). The government's experts testified that a residue of double-based smokeless powder had been collected at the scene, indicating that the bomb had been filled with an explosive main charge. FBI explosives examiner Donald Sachtleben testified that what appeared to be a fuse was clearly visible in a bank surveillance photograph of the bomb and that a similar fuse was found at the scene. He also testified that the motion sensor on the bomb could have served as a fuse by simply adding batteries and making a few connections. Thus, the evidence shows

that even if the pipe bomb was inoperable at the time of the robbery, it was readily convertible into an operable destructive device. In light of this evidence, a rational trier of fact could have found, beyond a reasonable doubt, that the pipe bomb was a destructive device.

## VIII.

■ McNeil and Hatcher next claim that the district court abused its discretion by admitting videotaped explosions of two pipe bombs that had been built as replicas of the bomb found in the bank. They insist that, under Federal Rule of Evidence 403, the probative value of the videotape was outweighed by the danger of unfair prejudice. We review the admission of a demonstrative video for an abuse of discretion. *Persian Galleries, Inc. v. Transcontinental Ins. Co.,* 38 F.3d 253, 257 (6th Cir.1994). The district court's discretion to admit demonstrative evidence is broadly construed and its actions will be upheld unless manifestly erroneous. *Id.* A determination that evidence is not unfairly prejudicial under Rule 403 is also reviewed for an abuse of discretion. *United States v. Sassanelli,* 118 F.3d 495, 498 (6th Cir. 1997).

We have previously held that a videotaped explosion of a bomb replica may be admitted for the purpose of demonstrating the explosive potential of the original bomb. *United States v. Jones,* 124 F.3d 781, 787 (6th Cir.1997). In order for the videotape to be admissible, the test must be "conducted under conditions substantially similar to those of the event." *Id.* However, this "standard is a flexible one that does not require all variables to be controlled." *Id.*

We conclude that the videotaped explosions were conducted under conditions substantially similar to those in the bank. At trial, Agent Sachtleben, an expert in improvised explosive devices, testified in detail how he constructed two bomb replicas that were identical to the bomb found in the bank. The defendants have not come forward with any evidence to indicate that the conditions depicted in the video were not substantially similar to those in the bank. Accordingly, the videotape was admissible under the standard set forth in *Jones.*

Finally, the defendants have not come forward with sufficient evidence showing that the district court's decision to admit the videotape was an abuse of discretion. As required under Rule 403, the district court carefully weighed the probative value of the evidence and concluded that it was not outweighed by the danger of unfair prejudice. Mindful of the district court's discretion under Rule 403, we agree.

## IX.

■ The next assignment of error belongs to McNeil, who claims that there was insufficient evidence to support the jury's verdict that he aided and abetted Hatcher's possession of a destructive device in furtherance of a crime of violence. McNeil contends that in order to convict him of aiding and abetting the possession of a destructive device the government must show that he personally used or carried the device. Because McNeil did not move for acquittal on the charge of aiding and abetting the possession of a destructive device, "appellate review is limited to determining whether there was a manifest miscarriage of justice." *Khalil,* 279 F.3d at 368 (internal quotation marks and citation omitted). Under this standard, "a jury verdict must be upheld if, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

(internal quotation marks and citation omitted).

As stated earlier, in order to establish that a defendant aided and abetted the use of a firearm during and in relation to a crime of violence, "[t]he government must prove that the defendant, as the accomplice, associated and participated in the use of the firearm in connection with the underlying ... crime [of violence]." *Rattigan*, 151 F.3d at 558. The government must show that the defendant was an active participant in the crime and that the crime would not have occurred in his absence. *Id.* "This can be satisfied if the accomplice knows that the principal is armed and acts with the intent to assist or influence the commission of the underlying predicate crime." *Id.*

Importing these standards for firearms to the realm of destructive devices, we conclude that there was sufficient evidence to convict McNeil of aiding and abetting the possession of a destructive device in furtherance of a crime of violence. While McNeil's accomplice, McCloud, collected money from one of the bank's tellers, McNeil and Hatcher controlled the movement of the bank's employees. With McNeil standing nearby, Hatcher placed a pipe bomb on the floor, telling the bank's managers that it was equipped with a motion sensor and that it would explode and kill anyone who moved. Before the three men left the bank, they herded the employees into a vault, while Hatcher told the employees: "I'm going to set the bomb, ... I'm going to close the door, and if you guys come out the bomb will go off and kill you." When viewed in the light most favorable to the government, this evidence was sufficient to convince a rational trier of fact that McNeil (1) knew Hatcher was armed with a destructive device and (2) acted with the intent to assist or influence the commission of the bank robbery.

## X.

Similarly, McNeil claims that the district court erroneously instructed the jury on the elements of aiding and abetting the possession of a destructive device. Because McNeil did not object to the jury instructions, we review for plain error only. *See United States v. Morrow*, 977 F.2d 222, 226 (6th Cir.1992). As stated earlier, plain error exists if (1) there was an error, (2) the error was plain, and (3) the error affected substantial rights. *Olano*, 507 U.S. at 732–34. If these three factors are present, an appellate court may notice a forfeited error, but only "if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736 (internal quotation marks and citation omitted).

As stated above, the government may establish that a defendant aided and abetted the use of a firearm during and in relation to a crime of violence by proving that "the accomplice knows that the principal is armed and acts with the intent to assist or influence the commission of the underlying predicate crime." *Rattigan*, 151 F.3d at 558. We are satisfied that the district court's instructions to the jury conformed to this standard of proof. The government was not required to prove that either McNeil or Hatcher personally used or carried the destructive device, because, under § 924(c), mere possession of a destructive device is also illegal. Accordingly, the district court's instructions to the jury on this count did not constitute error, much less plain error.

## XI.

Finally, we consider whether McNeil and Hatcher were properly convicted and sentenced for two violations of § 924(c), namely, brandishing a firearm and possessing a destructive device, even

though they were convicted of only a single predicate crime of violence. Because the defendants have forfeited this objection, we review for plain error only. *See United States v. Barajas–Nunez,* 91 F.3d 826, 830 (6th Cir.1996).

Section 924(c) provides the following:

[A]ny person who, during and in relation to any crime of violence ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence ...

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; ...

. . . .

(B) If the firearm possessed by a person convicted of a violation of this subsection—

. . . .

(ii) is ... a destructive device, ... the person shall be sentenced to a term of imprisonment of not less than 30 years.

. . . .

(D) Notwithstanding any other provision of law—

. . . .

(ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence ... during which the firearm was used, carried, or possessed.

18 U.S.C. § 924(c).

We have held that the Double Jeopardy Clause of the Fifth Amendment prohibits a court from "impos[ing] more than one sentence upon a defendant for violations of section 924(c) which relate to but one predicate offense." *United States v. Sims,* 975 F.2d 1225, 1233 (6th Cir.1992). Where a defendant has received multiple sentences and convictions in violation of this rule, this court has responded in one of two ways: (1) by vacating all but one of the § 924(c) convictions and sentences, *United States v. Taylor,* 13 F.3d 986, 994 (6th Cir.1994), or (2) by merging all of the § 924(c) convictions and sentences into one, *Sims,* 975 F.2d at 1235–36. In either case, the sentence imposed by the district court should be the highest of the sentences authorized by Congress and supported by the evidence. *Id.* at 1236.

The government concedes that the single predicate offense of bank robbery as alleged in the indictment can support only one conviction for each defendant under § 924(c). The sole dispute among the parties is whether the proper remedy is to vacate or merge the sentences and convictions. Practically speaking, the remedy will not change the result because, in either case, the defendants must be sentenced to the highest penalty available under § 924(c), which, given these facts, is 30 years.

The first case in this circuit to address the proper remedy for multiple § 924(c) convictions, and the case which is most nearly identical to the facts presented here, is *United States v. Sims,* 975 F.2d 1225. In *Sims,* the defendants were convicted of a single predicate drug trafficking offense, one count of using and carrying a firearm during and in relation to a drug trafficking offense in violation of § 924(c), and one count of using and carrying a machine gun during and in relation to a drug trafficking offense in violation of § 924(c). The firearm violation carried a mandatory penalty of five years; the ma-

chine gun violation carried a penalty of 30 years. This court held:

> where the indictment contains only one substantive ... [predicate] offense and separate counts under section 924(c) *for weapons which fall into more than one weapons category* as defined by that section, the court must consolidate those section 924(c) counts.... [This] may be accomplished [after trial] by submitting the separate gun counts to the jury and, should there be more than one conviction, merging those convictions after the trial.

*Id.* at 1235 (emphasis added).

Two years later, in *United States v. Taylor*, 13 F.3d 986, a panel of this court adopted a different remedy for addressing multiple § 924(c) convictions. In *Taylor*, the defendant was convicted of a single predicate drug trafficking offense as well as two counts of using and carrying a firearm during and in relation to a drug trafficking offense in violation of § 924(c). Each of the gun charges carried a mandatory penalty of five years. This court held:

> that the proper remedy, *when penalties are the same for either firearm count*, is to remand to the district court with an order to vacate the conviction and sentence on the second of the two firearms counts and to allow all other convictions and sentences to stand.

*Id.* at 994 (emphasis added).

While *Sims* and *Taylor* appear to be in conflict over the proper remedy for multiple convictions under § 924(c), the cases can be distinguished. In *Sims*, the weapons that gave rise to the multiple § 924(c) convictions, a firearm and a machine gun, fell into more than one weapons category under the statute and, therefore, exposed the defendants to different penalties. In *Taylor*, the weapons fell into the same category under the statute and, therefore,

carried the same penalty. Granted, this distinction is less than satisfying, because it does not explain precisely *why* merger was proper in *Sims*, but not in *Taylor*. In fact, if *Taylor* had employed the remedy first outlined in *Sims*, the defendant's sentence would have been the same.

Assuming that this distinction between *Sims* and *Taylor* is relevant, we conclude that the facts of the present case are practically indistinguishable from those of *Sims*. McNeil and Hatcher were convicted of (1) brandishing a firearm during a crime of violence and (2) possessing a destructive device during a crime of violence. Like the weapons in *Sims*, these two weapons are categorized differently under § 924(c) and expose the defendants to different penalties. *See Sims*, 975 F.2d at 1235. Even if we were to conclude that *Sims* and *Taylor* are in conflict, we are bound to follow *Sims* because it is a published decision that predates *Taylor*. *See Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir.2001). Accordingly, McNeil's and Hatcher's § 924(c) convictions and sentences should be merged and, on remand, the district court should sentence the two defendants to the longest term of imprisonment available under the statute. *See Sims*, 975 F.2d at 1236.

## XII.

For the foregoing reasons, the defendants' convictions are **AFFIRMED**. McNeil's and Hatcher's sentences are **VACATED** and their cases **REMANDED** to the district court with instructions to merge their convictions on Counts II and III and to resentence McNeil and Hatcher in a manner consistent with this opinion. Henderson's sentence is **AFFIRMED**.