# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

No. 14-60010
Summary Calendar

————

United States Court of Appeals
Fifth Circuit

**FILED**

September 8, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

SCOTT JENKINS WAITS,

Defendant-Appellant

————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:13-CR-55-1

————

Before SMITH, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Scott Jenkins Waits pleaded guilty to being an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3). He was sentenced, below the advisory guideline range of 41 to 51 months, to 31 months of imprisonment, three years of supervised release, and a fine of $1,000.00.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60010

Waits contends that the district court erred in calculating his base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B)(i)(II) and (ii)(I), and in upwardly adjusting his offense level by two levels under § 2K2.1(b)(3)(B) for conduct involving the manufacture and possession of a destructive device. He claims that the record lacks sufficient reliable evidence to attribute responsibility for the destructive device to him. He also claims that the only evidence linking him to the device are statements made by his co-defendant, John Eric Harberson, an admitted liar and drug abuser.

A district court's application of the Sentencing Guidelines is reviewed de novo, and its factual findings are reviewed for clear error. *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008). There is no clear error if the district court's findings are plausible in light of the record as a whole. *Id.* We defer to the credibility determinations of the district court. *Id.* The government must prove the facts necessary to support a guideline enhancement by a preponderance of the evidence. *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011).

The district court heard the testimony of Harberson, Waits, and Alcohol, Tobacco, and Firearm (ATF) Agent Knoll, then determined that Waits was aware that a destructive device was being manufactured at his home and that he either participated in or, at a minimum, aided and abetted and counseled Harberson in the making of the destructive device. Harberson testified at the sentencing hearing that he was at the ammunition-reloading table inside Wait's residence preparing to make the explosive device when Waits approached and told him to use a different type of gunpowder. Waits then got another type of powder from beneath the reloading bench and poured it into the sleeve of a disassembled flashlight cylinder. After Waits left the room and went back to bed, Harberson completed the process of making the destructive

2

device.  The fact that Harberson initially gave a false name when first arrested for possession of the device does not make his testimony about Waits's participation in the making of the explosive device so unreliable as to be unworthy of credibility.  The district court weighed the competing testimony and credited Harberson's testimony that Waits had participated by telling him the type of powder to use and by pouring powder into the flashlight cylinder.

A review of the evidence in this case does not leave us with "the definite and firm conviction that a mistake has been committed." *Rodriguez*, 630 F.3d at 380.  The district court did not clearly err in determining that Waits was involved in the manufacture of the device.

Waits also insists that the device in question was not a destructive device as defined in 26 U.S.C. § 5845(a)(8) and (f)(1).  He contends that the device's objective features do not support a finding that it was designed as a weapon and that Harberson testified that the device was designed for blowing up stumps, a legitimate purpose.

The device was in the nature of a pipe bomb, constructed by using a metal flashlight body that was sealed on one end with the brass from a 12-gauge shotgun shell and on the opposite end with a small, threaded metal cap. The device contained a quantity of explosive powder, identified by laboratory analysis as double-base smokeless powder.  An improvised fuse was fashioned from a piece of toilet paper that was twisted and coated with candle wax and inserted through the primer hole in the 12-gauge shell brass, allowing contact with the explosives contained within the shell brass.  According to analysis of the device by Walter L. Conklin, ATF Explosive Enforcement Officer, lighting the device's fuse would, after a short delay, ignite the gun powder contained within the device, causing it to explode.  Had the device exploded, metal fragments would have been projected in all directions, possibly causing damage

to property and injury or death to persons nearby.  The district court stated its opinion that "a metal cylinder which contains an explosive which could cause harm through the emission of shrapnel from at least the cylinder itself is, in essence, the very definition of a destructive device."

Waits cites *United States v. Hammond*, 371 F.3d 776, 780 (11th Cir. 2004), in which that court held that an explosive device made of cardboard, glue, candle wax, and tape was merely a firecracker and not designed as a weapon, because if "it exploded there is no evidence that anything would have been propelled but bits and pieces of cardboard."  Even under *Hammond*, the device in this case would qualify as a destructive device.  According to the expert analysis, despite the absence of nails or tacks, explosion of the device would project metal fragments from the flashlight body itself at high velocities, which could cause injury or death.

Our decision in *United States v. Charles*, 883 F.2d 355, 357 (5th Cir. 1989), supports the conclusion that this was a destructive device.  The devices in *Charles* were three pipe bombs, viz., tubes about ten inches long, each filled with explosive components and each having an igniter or fuse attached.  The defendant claimed that they were "percussion devices" designed to detonate underwater and stun fish.  Expert testimony indicated that the "percussion devices" were improvised grenades, which, when detonated, would explode loudly and released shrapnel.  We held that the evidence was sufficient to show that they were destructive devices.  883 F.2d at 357.

Waits urges us to consider the subjective intent of the person making the device and whether the device was created for a legitimate purpose.  He concedes that in *Charles* we rejected the defendant's professed subjective intent to create "percussion devices" to stun fish, but he seeks to distinguish

*Charles* because the evidence showed that these devices were comparable to grenades.

Waits also insists that the objective features of the device in this case do not support a finding that it was designed as a weapon. Although the device did not contain nails or tacks, it was designed so that the explosion of the metal cylinder itself would release shrapnel. Regardless of Harberson's stated intent to use the device to blow up stumps, its design demonstrates that it was an explosive pipe bomb capable of releasing shrapnel, which meets the definition of a destructive device. The district court did not err in so finding. *See Charles*, 883 F.2d at 357; s*ee also United States v. Johnson*, 152 F.3d 618, 621, 627-28 (7th Cir. 1998) (rejecting the defendant's explanation that his devices were poorly constructed and that he intended them to be used only as a hoax and not as weapons, and holding that the devices were useful only as weapons, given their objective characteristics that included all the ingredients necessary to make a destructive device, including shrapnel).

Finally, Waits claims that the district court erred by declining to grant a third-point reduction for acceptance of responsibility. He contends that, because the government declined to move for the third point without providing any explanation, there is no evidence that the court's refusal was based on the U.S.S.G. § 3E1.1(b) criteria, and the court should have granted it despite the absence of a government motion.

Although the government did not express a reason for its refusal to file that motion in the district court, the record supports the government's exercise of its discretion not to file such a motion. The parties filed various motions in preparation for trial, and the government had already sought orders for witnesses to testify at trial on October 7. Waits did not give notice of his intent to change his plea to guilty until September 27, six business days prior to the

No. 14-60010

scheduled trial. Waits's failure to notify authorities of his intent to enter a plea of guilty at a point early enough in the process so that the government could avoid preparing for trial is a proper consideration and an acceptable reason for not filing a motion for the third point. *See* § 3E1.1, comment. (n.6); *United States v. Rawls*, 276 F. App'x 402, 403 (5th Cir. 2008). Waits points to nothing in the record that indicates the government declined to file the motion for an improper reason.

AFFIRMED.