# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 18, 2022

Lyle W. Cayce
Clerk

No. 21-40332

United States of America,

*Plaintiff—Appellee*,

*versus*

Thomas Asa Harbarger,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:19-CR-16-1

---

Before Jones, Southwick, and Oldham, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Thomas Harbarger was convicted of illegally possessing an unregistered firearm, specifically a "destructive device," under the National Firearms Act ("NFA"). *See, e.g.,* 26 U.S.C. §§ 845(a), 5861(d). Appealing his conviction, Harbarger argues that the NFA is unconstitutionally vague as applied to his case and that the evidence is insufficient to support conviction.

No. 21-40332

After a thorough review of the record, we agree with the latter contention and accordingly REVERSE.[1]

## I. Background

While seeking to aid a man with his broken-down truck on a state highway, a Texas state trooper discovered that the truck was reported stolen and the man, Thomas Harbarger, had an outstanding warrant for failing to report to his parole officer.[2]  That trooper arrested Harbarger while a second trooper, who had since arrived, searched the truck.  The second trooper found a 7.5-inch-long piece of bamboo, sufficiently narrow that a penny (3/4" wide) was able to cap one end.[3]  On the other end was a short fuse.  When questioned about the fused bamboo stick, Harbarger stated that it was one of several he had possessed for the purpose of removing beaver dams.  He had already used the others and had forgotten that one remained in the truck.

After he was indicted for knowingly possessing an illegal destructive device-type firearm, Harbarger moved to dismiss the indictment by arguing that the statute was vague as applied to the facts.  The district court was unmoved and about a year later held a two-day jury trial.

At trial, the government's witnesses included three Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") employees who had

---

[1]  Because there is insufficient evidence, we do not reach Harbarger's as-applied unconstitutional vagueness challenge to the NFA.

[2] Regarding the stolen vehicle, Harbarger was making payments on the truck.  The title-holder reported it stolen after Harbarger missed several of those payments, generating the stolen vehicle report.  At the time of trial, Harbarger had resumed making payments on the vehicle.

[3] During his direct examination, the ATF's Explosives Enforcement Officer stated that the end opposite the fuse was capped with a green bottle cap and "two U.S. pennies on that end also, all glued together to basically seal that end up."

analyzed the stick of bamboo.  They testified that they found pyrodex inside the device, that one could consider the stick of bamboo a pipe bomb, and that it was possible the bamboo stick would burst if the pyrodex was ignited.[4]

When the government completed its case in chief, Harbarger moved for acquittal under Federal Rule of Criminal Procedure 29 on the basis of insufficient evidence.  The district court denied the motion.  Harbarger then testified in his own defense.  Despite his earlier statements, Harbarger testified that an acquaintance had built and ignited the other bamboo sticks.  Further, he considered the devices to be like firecrackers, and they made a popping sound.  At the conclusion of his case, Harbarger unsuccessfully renewed his motion for a judgment of acquittal.  The jury returned a guilty verdict, and the court sentenced Harbarger to 72 months of imprisonment.  Harbarger timely appealed.

## II.  Discussion

When a defendant moves for a judgment of acquittal at the close of the government's case in chief and again at the close of all evidence, his challenge to the sufficiency of the evidence is reviewed *de novo*, with reasonable inferences drawn in favor of the government.  *United States v. Williams*, 507 F.3d 905, 907-08 (5th Cir. 2007).  We may reverse a conviction only if no rational trier of fact could find guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 2788 (1979).

---

[4] Pyrodex is a smokeless powder also known as a kind of black powder substitute. It is not black powder, and is not regulated as black powder.  It can be purchased at some local convenience stores.  The government did not admit into evidence the amount of pyrodex that was found within the bamboo stick, the thickness of the wall of the bamboo stick, nor an explanation of the extent of damage that the bamboo stick could cause.  The government sought to establish that the bamboo stick contained incendiaries, that the bamboo could splinter or "create shrapnel," and that with a fuse, the stick became a "pipe bomb."

No. 21-40332

The determinative issue in this appeal is whether an explosive-containing device falls within the NFA when it is susceptible of both innocent and destructive uses and not clearly designed as a weapon. The NFA criminalizes the possession of an unregistered firearm, 26 U.S.C. § 5861(d), including a "destructive device." 26 U.S.C. § 5845(a). A destructive device is defined to include "any explosive, incendiary, or poison gas . . . bomb." 26 U.S.C. § 5845(f). But excluded from that definition is "any device which is neither designed nor redesigned for use as a weapon." 26 U.S.C. § 5845(f).

Other circuits have grappled with the application of these provisions and whether the government provided sufficient evidence to prove a particular explosive-containing device was a "destructive device." Those cases provide a helpful roadmap. For example, in *United States v. Johnson* the Seventh Circuit aptly described the problem and the solution:

> the case law demonstrates a fundamental distinction between devices and components that are, by their very nature, ones that can be used only for illegal purposes and devices and components that could have both a proscribed and a legitimate use. When the destructive nature of the devices or of the component parts is obvious because they are suited only for a proscribed purpose, no inquiry into the intent of the possessor is necessary; when the item or items charged under [the NFA] can serve either a destructive or a salutary purpose, the intent of the possessor becomes important and criminal liability only attaches when the possessor intends to possess a device for destructive purposes.

152 F.3d 618, 627 (7th Cir. 1998).[5] Similarly, the Fourth Circuit has held that "[t]he plain language of the Act, consequently, establishes that other types

---

[5] The primary issue in *Johnson* was whether the district court correctly excluded evidence that Johnson intended his devices to be "hoax" devices. The Seventh Circuit affirmed the district court, reasoning that the exclusion of subjective intent evidence is

No. 21-40332

of explosives, such as commercial black powder or dynamite, are subject to . . . the National Firearms Act depending on their intended use." *United States v. Morningstar*, 456 F.2d 278, 281 (4th Cir. 1972).

Drawing from these analyses, it is reasonable to conclude that when there is doubt whether a device that has some social value and legal use nonetheless falls within the NFA's ambit, evidence of scienter or evidence that the device can be used solely for illegal purposes is necessary to sustain a conviction. This court's decision in *United States v. Charles*, 883 F.2d 355 (5th Cir. 1989), and the Eleventh Circuit's decision in *United States v. Spoerke*, 568 F.3d 1236 (11th Cir. 2009), illustrate how this might be done.[6]

In *Charles*, the defendant asserted that his pipe bombs were not weapons but percussive instruments to stun fish. The government tested his assertion by detonating them. *Charles*, 883 F.2d at 357. When detonated, Charles's pipe bombs did not just pop, boom, or create some other innocuous effect as claimed. *Id.* Instead, they behaved like improvised fragmentation

---

permissible when the device in question is so obviously designed as a weapon. *Johnson*, 152 F.3d at 627. The court pointed to the analysis in *United States v. Charles*, 883 F.2d 355 (5th Cir. 1989), regarding why certain devices, such as a metal pipe containing explosives, are *per se* weapons under the NFA. However, the Seventh Circuit emphasized that "when the components are susceptible to both innocent and destructive use, it is necessary to determine the subjective intent of the defendant in gathering them." *Id.* at 625.

[6] The government cites a number of unpublished and out of circuit cases in support of its argument, but none involve a bamboo device similar to the one here. *See, e.g., United States v. Waits*, 581 F. App'x 432 (5th Cir. 2014) (destructive device consisted of a metal flashlight); *United States v. Rosa*, 499 F. App'x 358 (5th Cir. 2012) (felon in possession of firearms, cocaine, marijuana, and a PVC pipe containing explosives); *United States v. Hunn*, 344 F. App'x 920 (5th Cir. 2009) (destructive device consisted of a metal pipe containing explosives that was used to hold back police during a six-hour standoff); *United States v. Bolatete*, 977 F.3d 1022 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1754 (2021) (case involved an illegal silencer, not a pipe bomb); *United Sates v. Barefoot*, 754 F.3d 226 (4th Cir. 2014) (the destructive device was a 30 lbs. bomb); *United States v. McNeil*, 106 F. App'x 294 (6th Cir. 2004) (the accused used a pipe bomb to rob a bank).

grenades and violently dispersed fragmentation. *Id.* at 356-57. At trial, the expert who tested Charles's devices opined that they were not noisemakers but in fact improvised explosive grenades. *Id.* Just as "one would hardly be surprised to learn that possession of hand grenades is not an innocent act," Charles was found guilty for possessing improvised pipe bombs that actually worked like grenades. *United States v. Freed*, 401 U.S. 601, 609, 91 S. Ct. 1112, 1118 (1971) (finding that there was no excuse for possessing a grenade given its obvious nature as a likely regulated instrument of war).

Similarly, in *United States v. Spoerke*, the defendant was prosecuted for possessing plastic pipes filled with explosives. 568 F.3d at 1248. He had admitted to police that the devices were illegal but claimed he had produced them for entertainment purposes. The pipe bombs, he testified, would sink when thrown into water, produce a flash, and create a concussive effect on observers. To rebut this description, the government constructed identical devices and detonated them in the water and on land. Contrary to Spoerke's testimony, the devices did not sink, they floated. *Id.* at 1243. Further, when exploded they sent plastic fragments flying. *Id.* In fact, when attached to a watermelon or placed within a toolbox, the bombs' detonation would obliterate the attached object and disperse fragments up to 200 feet away. *Id.* As the court explained, given this and other evidence, the conviction easily withstood a sufficiency challenge.

The *Spoerke* court also explained significant distinctions between that case and an earlier case in which a different explosive device was held not to be proscribed by the NFA. *Id.* at 1246-47 (discussing *United States v. Hammond,* 371 F.3d 776 (11th Cir. 2004)). The court made clear that a device is not illegal simply because it explodes; it must also be *designed* for use as a weapon. *Hammond,* 371 F.3d at 780. The government's expert in *Hammond* testified only that the paper-encased explosive device there could explode and cause damage. *Id.* Spoerke's devices, however, could be deemed to be

designed as weapons because they had "design features that eliminate any claimed entertainment or other benign value . . . ." *Spoerke,* 568 F.3d at 1247 (quoting *Hammond,* 371 F.3d at 781).

In this case, the government's only evidence challenging Harbarger's testimony that his bamboo stick device was used to scare beavers and destroy their dams (and wasn't very good even at that) was the conclusional testimony of an ATF expert.[7] The expert's opinion, however, consisted of his saying that the device would fragment on being ignited, and the eruption of two pennies and a plastic bottle cap, along with the bamboo, could destroy property. Because the device had no "commercial application," he testified, it must be illegal. But breaking up a beaver dam cannot alone sustain a finding that a flimsy explosive device is *designed* as a weapon, and these fragments do not resemble in dangerousness the relevant fragmentation in other cases.[8] The deficiency of proof in this case resembles that in *Hammond* and cannot compare with the evidence offered in *Spoerke* and *Charles.* Here, a government agent merely burned off an unknown amount of the powder contained in the bamboo stick. The government did not test the device beyond ascertaining that it contained pyrodex; the government did not create replicas and test those devices; nor did it provide any other meaningful evidence from which the design to create weaponry could be inferred. For example, the government did not establish the amount of powder in the

---

[7] The *Spoerke* court noted a circuit conflict concerning the admissibility of a defendant's subjective intent concerning the purpose of an explosive device. 568 F.3d at 1247-48 (citing cases). Although the admissibility of Harbarger's testimony was not debated here, such testimony was offered in *Charles*, and it can fairly be concluded that in this circuit, when the illegal nature of an explosive device is at issue, such testimony should be allowed.

[8] Another government witness essentially conceded, from his description of the device, that the explosive potential of the bamboo stick was small.

device, the thickness of the bamboo's bore, the thickness of its wall, testimony of personal experience with other similar bamboo devices, expert testimony describing reports regarding similar bamboo devices, or Harbarger's knowledge of any of the above information.  The government accordingly failed to provide proof that the device was "suited only for a proscribed purpose" or contradicting Harbarger's expressed "intent of the possessor."  *Johnson*, 152 F.3d at 627.[9]

In light of the government's wholly conclusionary case that the bamboo device was designed as a weapon or that it had no benign or social value, the conviction cannot stand.  The evidence was insufficient to prove that the bamboo stick was an illegal explosive device "designed" as a weapon.  Unlike cases involving Molotov cocktails or improvised grenades (e.g. metal, PVC, or ceramic pipe bombs designed to fragment and violently disperse shrapnel or metal fragmentation), no published case has held that a small bamboo device like the one at issue here is *prima facie* a proscribed destructive device.

Accordingly, the judgment of conviction is REVERSED.

---

[9] Harbarger was cross-examined on his criminal record and attempt to mislead the police about his identity when the trooper first encountered him.  It's too much of a stretch from these facts to draw inferences of his guilty *mens rea* concerning illegal weapons possession, which did not even become a potential issue until his truck had been searched.