UNITED STATES of America, Appellee,

v.

Joseph RAGUSA and John Caresio, Appellants.

No. 81–1076.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1981.

Decided Dec. 1, 1981.

Rehearing and Rehearing En Banc Denied Jan. 28, 1982.

Donald R. Hoffman, argued, John C. Humpage, argued, Humpage, Berger & Hoffman, Topeka, Kan., James L. Eisenbrandt, Overland Park, Kan., Ronald E. Partee, Kansas City, Mo., for appellants.

J. Whitfield Moody, U. S. Atty., W. D. Mo., Sheryle L. Jeans, argued, Atty., U. S. Dept. of Justice, Kansas City, Mo., for appellee.

1. The Honorable Howard F. Sachs, United States District Judge, Western District of Mis-

Before BRIGHT, HENLEY and ARNOLD, Circuit Judges.

HENLEY, Circuit Judge.

Defendants appeal their convictions under the National Firearms Act, 26 U.S.C. § 5801 *et seq.*, for possession of an unregistered firearm in violation of § 5861(d). We affirm the judgment of the district court.[1]

The essential facts are as follows. Sometime before 2:30 a. m. on June 6, 1979, Wilma and Robert Ladd heard a car stop outside their home and, going to the window, observed several men, one heavyset, entering a vacant house across the street carrying trash bags. Mr. Ladd called the police at 2:30 a. m., then returned to the window to watch until the police arrived. The car drove off, leaving the men inside the lighted house. Officer Kinder, responding to the call, arrived at approximately 2:35 a. m. As he approached the house, his attention was diverted to the corner of the block by the sound of a car honking. When he looked back at the house, he noticed that the lights had been turned off, and saw defendants Ragusa and Caresio, a heavyset man, emerging through the front door. Officer Kinder immediately stopped and frisked the defendants, then left them with his back-up officer while he went to look inside the house, where he observed a plastic container filled with gasoline suspended from a wooden window frame and paper towels trailing through the house. He called for assistance from the Bomb and Arson Unit and arrested defendants for attempted arson.

An investigation of the house revealed six trash bags, each holding a five-gallon container of gasoline, suspended in various locations and connected by overlapping paper towels trailing throughout the house. Several holes had been knocked in the ceiling and the gas pipe behind the kitchen stove was broken, although there was no gas in the pipe. A bottle of flammable liquid was

souri.

found on a table along with a box containing tissue paper and several matchbooks with the covers removed and fastened to some cigarettes with rubberbands.

Ragusa and Caresio were indicted for unlawfully and knowingly possessing a firearm, or more specifically, a destructive device, as defined in 26 U.S.C. § 5845(f).[2] The trial court declined to rule on the government's pretrial motion to determine the sufficiency of the indictment charging possession of a destructive device and reserved the issue for post-trial determination. The case proceeded to trial on September 22, 1980. After failing to reach a verdict, the jury was discharged and the case was retried on October 21, 1980. The second jury returned a verdict of guilty. In denying defendants' various post-trial motions for judgment of acquittal, arrest of judgment, and new trial, the trial court found that the indictment was sufficient and that there was sufficient evidence to support the jury's verdict.

Defendants' primary contention in their post-trial motions and on appeal is that the collection of items found in the house does not constitute a destructive device within the meaning of the statute. It is their position that the language of the statute and its legislative history exclude from coverage the device here in question. This issue is a difficult one and was of some concern to the trial judge, who stated in his order of November 18, 1980 that "[i]n effect, the government's evidence shows attempted arson. The Court is doubtful that

Congress intended prosecutions of the type here involved, under the registration statute in question." Nevertheless, the district court concluded that the "prosecution falls within the literal meaning of the general terms of the statute." *See United States v. Bubar,* 567 F.2d 192, 200–01 (2d Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977). We are inclined to agree.

The legislative history of the 1968 Gun Control Act, which amended the National Firearms Act by adding "destructive device" to the definition of firearm, 26 U.S.C. § 5845(a)(8), indicates that Congress was attempting to stem the "increasing rate of crime and lawlessness and the growing use of firearms in violent crime." 1968 U.S. Code Cong. & Ad.News 4410, 4412. *See United States v. Greer,* 588 F.2d 1151, 1155 (6th Cir.), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *United States v. Posnjak,* 457 F.2d 1110, 1113 (2d Cir. 1972); *United States v. Oba,* 448 F.2d 892, 894 (9th Cir. 1971), *cert. denied,* 405 U.S. 935, 92 S.Ct. 979, 30 L.Ed.2d 811 (1972) (dissenting opinion). Although the crimes specifically mentioned in the House Report—for example, murder, aggravated assault, and robbery—are generally directed towards persons rather than property, there is no indication that crimes involving firearms and directed toward property are excluded, and the courts have not so limited the statute's application. *See, e. g., United States v. Bubar, supra* (destructive device

---

2. 26 U.S.C. § 5845(f) provides:

The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in

converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10 of the United States Code; or any other device which the Secretary finds is not likely to be used as a weapon, or is an antique or is a rifle which the owner intends to use solely for sporting purposes.

used to commit arson); *Langel v. United States*, 451 F.2d 957 (8th Cir. 1971) (destructive device used to destroy vehicles). In addition, the statute's emphasis on unlawful possession, rather than use, of a firearm further suggests that the possessor need not use the firearm in the commission of any particular sort of crime to be in violation of the statute. 26 U.S.C. § 5861(d). *See United States v. Greer, supra* (destructive device discovered being shipped via United Parcel Service); *United States v. Peterson*, 475 F.2d 806 (9th Cir.), *cert. denied*, 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 93 (1973) (destructive device intended to burn haystacks); *United States v. Morningstar*, 456 F.2d 278 (4th Cir.), *cert. denied*, 409 U.S. 896, 93 S.Ct. 135, 34 L.Ed.2d 153 (1972) (destructive device concealed on college campus); *United States v. Harflinger*, 436 F.2d 928 (8th Cir. 1970), *cert. denied*, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971) (destructive device found in trunk of car).

◼ Having found no clear legislative intent to exclude from the registration requirements firearms used in perpetration of arson or attempted arson,[3] the issue becomes whether the combination of items in the present case falls within the statutory definition of destructive device. 26 U.S.C. § 5845(f) provides in pertinent part that a destructive device includes an "(1) . . . incendiary . . . (A) bomb, . . . or (F) similar device; . . . and (3) any combination of parts . . . intended for [conversion] into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled."

Defendants urge that the statute, as a criminal provision, should be construed narrowly. *See United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971). Noting that the statute does not define bomb, they offer the following dictionary definition from Webster's New Twentieth Century Dictionary (2d ed. 1971): "[A]n explosive, incendiary, or gas filled container for dropping, hurling, or setting in place to be exploded by a timing mechanism," and also refer to *United States v. Peterson, supra*, wherein the characteristics of an incendiary device were listed as "a fuse, a priming mixture [to ignite] the main fuel, the fuel itself and a container for the device." 475 F.2d at 810. Defendants further challenge the construction of the statute which focuses on the antisocial purpose of a device rather than on its objective qualities. *See United States v. Morningstar*, 456 F.2d at 280–81; *United States v. Ross*, 458 F.2d 1144, 1145–46 (5th Cir.), *cert. denied*, 409 U.S. 868 (1972); *United States v. Oba*, 448 F.2d at 894, *cited in Langel v. United States*, 451 F.2d at 962.

◼ We need not determine the precise boundaries of the statutory definition, however, because we find that the device described by the prosecution falls within the statute and indeed is within the construction urged by defendants. Although the amendment adding "destructive device" to the definition of firearm was perhaps primarily aimed at military-type weapons, *see United States v. Posnjak*, 457 F.2d at 1116; *United States v. Oba*, 448 F.2d at 897 (Browning, J., dissenting), it appears that "a homemade incendiary product also might be embraced within the statute's definition." *United States v. Bubar*, 567 F.2d at 201. *See United States v. Peterson*, 475 F.2d at 810. As the trial judge noted, a

---

**3.** Defendants attempt to analogize the definition of destructive device in § 5845(f) to the definition of "explosive or incendiary device" in 18 U.S.C. § 232(5), which was found by the district court in *United States v. Birchfield*, 486 F.Supp. 137 (M.D.Tenn.1980), to exclude throwing lighted paper onto a gasoline-soaked floor. The court in that case noted that "the form of destruction described in . . . the indictment is a very common means of arson, and in the absence of clear statutory language or a compelling legislative history, this Court must

assume that Congress . . . did not intend to exert federal jurisdiction over this traditional area of state concern." 486 F.Supp. at 138–39. However, we are not dealing in this case with a "very common means of arson," but with an attempt to destroy property by means of a complex apparatus. In addition, we note that the defendants in *Birchfield* were charged under the section of the Explosives Control Act codified at 18 U.S.C. § 844(i), which emphasizes unlawful use, rather than possession, of explosive or incendiary devices.

good example is a Molotov cocktail which has consistently been held to fall within the meaning of destructive device. *See, e. g., United States v. Tankersley*, 492 F.2d 962 (7th Cir. 1974); *United States v. Ross, supra; United States v. Banks*, 368 F.Supp. 1245 (D.S.D.1973). The device in the present case, albeit crudely constructed, possessed all the physical components of a device similar to a bomb. The main fuel, of course, was the gasoline, contained in the several trash bags suspended throughout the house. The paper towels formed a fuse which led to the igniter, or trigger, consisting of the matchbooks fastened to the cigarettes. The bottle of flammable liquid was apparently intended to function as the primary mixture.

◼ Nor are we persuaded by defendants' argument that the device in the present case fails for lack of a single container. *United States v. Peterson*, 475 F.2d at 810. Common sense indicates that the fuel need not be housed in only one container. It cannot be seriously contended that if defendants had connected only one bag of gasoline to a paper towel fuse, this would constitute a destructive device whereas several containers so connected would not. It seems more probable that the concept of a container is included to distinguish a situation where, for example, gasoline is simply spilled on the floor and ignited. *Cf. United States v. Birchfield*, 486 F.Supp. 137 (M.D. Tenn.1980) (throwing lighted paper on gasoline-soaked floor did not constitute an incendiary device as defined in 18 U.S.C. § 232(5)). The question is whether all components once "connected, in however crude a fashion, [formed] a *new entity* with destructive capabilities of its own and without a legitimate purpose." *United States v.*

*Bubar*, 567 F.2d at 201. As stated earlier, the combination of items connected together in the present case possessed the physical elements of a device similar to a bomb, and clearly had no other purpose than to destroy the house in which it was located.

◼ Finally, defendants argue that the device as constructed could not have functioned as intended and was therefore not a destructive device. We note, however, that the testimony was apparently conflicting on this point, and, at any rate, it is not necessary that the device actually function as intended. *United States v. Evans*, 526 F.2d 701, 707 (5th Cir.), *cert. denied*, 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1976); *United States v. Rushcamp*, 526 F.2d 1380, 1382 (6th Cir. 1975).

◼ In connection with their contention that the items found in the house did not constitute a destructive device, defendants object to portions of the jury instructions defining destructive devices as including stationary as well as movable items and also as including "[a]ny article or device composed of a combustible material capable of producing sufficient heat to destroy property of any kind, and having components designed to ignite that combustible material." As for the distinction between movable and stationary devices, we find no basis for limiting the definition of destructive device to only those devices capable of being carried or thrown.[4] Defendants' own proposed definition allows a bomb to be "set in place," as was the device in the present case. *See United States v. Bubar, supra.* With respect to the portion of the instruction quoted above, we note that this portion was patterned after an instruction approved by the Ninth Circuit in *United*

---

4. Again, defendants attempt to analogize § 5845(f) to 18 U.S.C. § 232(5). *See* n.3 *supra.* Section 232(5) defines an explosive or incendiary device as follows:

(5) The term "explosive or incendiary device" means (A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable

container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) *can be carried or thrown by one individual acting alone.*
*Id.* (Emphasis added.) A careful reading of this section reveals that § 232(5) is not limited to devices capable of being carried or thrown, but rather "includes" such devices.

*States v. Peterson, supra,* and further that the device, as stated, was covered by defendants' proffered definition.

Defendants next contend that there was insufficient evidence to support a finding that defendants were in possession of the device. Admittedly, this finding was based on circumstantial evidence. However, the trial court, in denying defendants' motion for acquittal, noted that circumstantial evidence could support a finding of possession. *Langel v. United States,* 451 F.2d at 960–61. The Ladds observed men entering the house carrying trash bags and watched the silhouettes moving about inside the house. Mr. Ladd testified that he saw no one else enter or leave the house during the short time before the police arrived, and defendants were seen leaving through the front door and were immediately stopped.

We therefore conclude that the trial court properly found the indictment sufficient to charge possession of a destructive device and that there was sufficient evidence to support the jury's verdict.

The next issue raised by defendants on appeal is the failure of the trial court to grant more than a one day continuance before the commencement of their second trial. Defendants requested a continuance because their lead counsel had withdrawn. In granting a one day continuance, however, the trial judge noted that defendants' two other attorneys had actively engaged in trial preparation, one of them throughout, and that no real need had been shown by defendants warranting a longer continuance. We cannot say that the trial judge abused his discretion in granting a continuance of only one day.

We have carefully considered defendants' other assertions of error based on the reference of the government's witness to the combination of items as a "device," the alleged variance from the bill of particulars, and the court's instruction regarding pos-

session, and find them equally without merit.

For the foregoing reasons, we affirm the judgment of the district court.