[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 25, 2004
THOMAS K. KAHN
CLERK

_____

No. 02-15956

_____

D.C. Docket No. 02-00068-CR-3-RV


UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ALAN S. HAMMOND,

Defendant-Appellee.


_____

Appeals from the United States District Court
for the Northern District of Florida

_____

**(May 25, 2004)**

Before TJOFLAT, BARKETT and HILL, Circuit Judges.

HILL, Circuit Judge:

The government appeals the district court's grant of Alan Hammond's motion for judgment of acquittal, which the court granted after a jury returned a guilty verdict on one count of knowingly making a firearm in violation of 26 U.S.C. §§ 5845, 5822, 5861(f) and 5871, and one count of knowingly possessing a firearm in violation of 26 U.S.C. §§ 5845, 5841, 5861(d), and 5871. For the following reasons, we affirm the judgment of acquittal.

I.

The government charged Alan Hammond with knowingly making a firearm without first registering, paying tax on, and obtaining approval to make the firearm from the Secretary of the Treasury. The "firearm" in question was a cardboard tube, approximately thirteen inches long and one-and-one half inches in diameter. The circular wall of this tube was made of ten layers of industrial grade cardboard and was approximately three-eights of an inch thick. The inside of the tube was filled with a mixture of approximately nine ounces of pyrodex, an explosive powder, ground pyrodex, and smokeless gunpowder. The ends of the cardboard tube were crimped and dipped in liquid candle wax. The whole device was re-enforced with three layers of different types of tape. A green fuse, wrapped in

2

aluminum foil, was placed through one of the ends and ran to the center of the device.

At trial, the government called several witnesses who testified that the defendant constructed the device, and that he had constructed numerous similar, but smaller, devices. These witnesses expressed the opinion that most of these earlier devices were unsuccessful because they rarely exploded with more than a small "pop" and a minor puff of smoke, or they simply "fizzed" out. Occasionally, however, one of these devices did create a small explosion.

The government's first expert witness testified that the chemical composition of the device consisted of a mixture of "low explosive" powders, used for battle re-enactments, firearms, and pyrotechnic devices. She also testified that these chemicals burn quickly, generating gases that, if tightly contained, build up pressure until the container bursts, resulting in an explosion.

The government's second expert, Richard J. Campbell, testified that, in his opinion, Hammond designed his device as a weapon. He based this opinion on the fact that the device was designed to explode, and that, upon explosion, "[a]nyone within direct proximity of this device could sustain serious injury or death."

Campbell explained that Hammond's device was designed to explode because the wall of the tube, constructed of ten layers of industrial cardboard, was "as hard as wood." Because of the strength of its construction, the tube would contain substantial pressure before the force of the expanding gasses inside would cause it to explode. He characterized the device as an explosive "bomb," comparable to a one inch by eight inch stick of dynamite. Although he acknowledged that the ends of this particular device would have failed before the tube's cardboard wall exploded outward, and that the gunpowder used in the device was not as highly explosive as TNT or dynamite, it was his opinion that the objective design of Hammond's device indicates that it was intended to be a weapon.

At the close of the government's case, Hammond moved for a judgment of acquittal on both counts, arguing that the government's evidence was insufficient to prove that the device was a destructive device within the meaning of the statute. The district court reserved ruling on the motion pursuant to Rule 29(b), Fed. R. Crim. P. Hammond then presented his case and called his own expert witness, who testified that the ends of the device would have quickly failed, thus preventing any serious explosion.

4

At the close of the evidence, the defense renewed its motion for a judgment of acquittal, and the court again reserved ruling on the motion. The case was submitted to the jury, which returned a verdict of guilty.

Subsequently, the court entered a written order ruling on the reserved motion for a judgment of acquittal, stating that, pursuant to Rule 29(b), it was considering the evidence at the time the ruling was reserved, which it characterized as the close of all the evidence. In its order, the district court granted the motion, explaining that "[t]here was no evidence presented to the jury that would have allowed it to conclude, after an objective examination, that the device in question was a 'destructive device' within the meaning of Section 5845." The court entered a separate judgment of acquittal.

The government appeals this judgment, arguing that the district court erred in considering the defendant's evidence in ruling on the reserved motion for a judgment of acquittal, and in granting that motion.

II.

The government's first argument is that the district court erred in considering all the evidence in ruling on the reserved motion for a judgment of acquittal. The government argues that while the court may reserve ruling on a

motion for a judgment of acquittal made at the close of the government's case, when it subsequently rules, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). *United States v. Wahl*, 290 F.3d 370 (D.C. Cir. 2002) (ruling on reserved motion for judgment of acquittal, made at close of government's case, must be made solely on the evidence offered by the government).

In this case, however, the district court explicitly stated that in overturning the jury's verdict and granting the motion for a judgment of acquittal, it was considering *all* the evidence, including that of the defendant. Although the motion was initially made at the close of the government's case, the district court treated its renewal at the close of all the evidence as a motion then made for a judgment of acquittal. As such, the court was entitled to consider all the record evidence in considering the motion.

Furthermore, the purposes of Rule 29(b) were not undermined by the district court's consideration of all the evidence, including that presented by the defendant. The purpose of Rule 29(b) is to permit the defendant to put on evidence without fear that some portion of that evidence will be used to bolster the government's case when the court subsequently rules upon his motion for

6

acquittal. Thus, even if Rule 29(b) did require the court to limit its review to the record at the time of the close of the government's case, as the government argues,[1] the *grant* of the judgment of acquittal would render any error harmless. The district court's consideration of Hammond's evidence did not punish him in contravention of the purpose of the rule. In fact, it apparently helped him. Therefore, it was within the spirit, if not the letter, of the rule, and there was no reversible error in the court's consideration of all the evidence.

Nor do we find any error in the district court's decision to grant the judgment of acquittal. The statute prohibits the knowing making and possessing of a "firearm" without first registering, paying tax on, and obtaining approval to make and possess the firearm. 27 U.S.C. § 5822, 5861(f). The statute defines a firearm as a destructive device, 26 U.S.C. § 5845(a)(8), including any explosive device. 26 U.S.C. § 5845(f)(1). The government's theory was that Hammond's device came within the statute's proscriptions because it was an explosive device. The government's expert testified to its construction and explosive capabilities,

---

[1]We note that a rule that would require the court to ignore evidence presented by the defendant that negates an element of the government's case would run counter to the purpose of Rule 29(b), which is to protect the defendant's right to put on a defense.

and offered his opinion that "[a]nyone within direct proximity of [such an explosion] could sustain serious injury or death."

This, however, is not enough to bring the device within the statutory framework. Although the statute does define a "destructive device" to include explosive devices, such as Hammond's, it also explicitly excludes from coverage any explosive device not *designed* for use as a *weapon*. 26 U.S.C. § 5845(f). Thus, a device that explodes is not covered by the statute merely because it explodes. Statutory coverage depends upon proof that a device is an explosive *plus* proof that it was designed as a weapon. No explosive can constitute a destructive device within the meaning of the statute unless it has this "plus" factor. Thus, Hammond's device is a "destructive device" within the meaning the statute if, and only if, it was designed for use as a weapon. *United States v. Copus*, 93 F.3d 269, 274 (7th Cir. 1996); *United States v. Reindeau*, 947 F.2d 32, 36 (2d Cir. 1991).

The government, however, offered no proof of this required "plus" factor.[2] Although the government's expert did testify that it was his opinion that the design of the device indicated that it was constructed as a "weapon," he offered no

---

[2]Indeed, in closing argument, the government failed to argue that Hammond's device was designed as a weapon, not referring to that requirement of the statute at all.

insight as to how he arrived at this conclusion other than that the device would explode and cause damage. It is clearly insufficient proof under the statute to opine that an explosive device is a designed as a weapon because it is an explosive device. Without some other evidence that a device was specifically designed as a weapon – the plus factor – the statutory requirement that a device be so designed is reduced to surplusage.

The statute does not say, what, if shown, would constitute the "plus" required to prove that an explosive device was designed as a weapon. Without suggesting exhaustion, one can, as the district judge did, provide numerous examples of design features that would support a jury finding that an explosive device was designed as a weapon. An explosive device could be made of metal, steel or cast iron pipe, with caps threaded at each end. Not only would it explode, but the "plus" could be found in the fact that when the pipe ruptured, fragments of it would be propelled like shrapnel against the bodies of those in the vicinity. Courts have held such a device to be a weapon. *United States v. Lisk,* 559 F.2d 1108, 1109 n.1 (7th Cir. 1977); *United States v. Worstine*, 808 F. Supp. 663, 668 (N.D. Ind. 1992).

Unlike such a pipe bomb made of galvanized metal, Hammond's device was constructed of cardboard. Had it exploded there is no evidence that anything would have been propelled but bits and pieces of cardboard. One court has held that an explosive device made of PVC pipe, harder and more brittle than the cardboard used by Hammond, was not designed as a weapon. *Worstine*, 808 F. Supp. at 670.

Even a cardboard tube explosive device, however, could be designed to include tacks, nails, or other small metal pieces. A device so designed would be an explosive "plus" and would appear to support a jury's finding that the device was designed as a weapon. *See United States v. Beason*, 690 F.2d 439 (5th Cir. 1982) (device embedded with BBs was a destructive device under statute). Hammond's device, however, was not designed to expel projectiles.

A cardboard tube explosive device, not surrounded by metal or containing other hard projectiles, might yet contain or be surrounded by incendiary material designed to be ignited by the heat and propelled by the concussive effect of the explosion. This "plus" factor would support a jury finding that such an explosive device was designed as a weapon. But no such design appears from the evidence here.

Explosive device plus radioactive material, poison gas, deadly germs or the like to be broadcast by the explosion would indicate design as a weapon sufficient, we think, to support a guilty verdict. Again, no such design is present here.

The district judge conducted the type of review of the evidence suggested above and found that evidence insufficient to support a conviction under the statute. We agree with that conclusion.[3]

We do not imply by our recitation of Hammond's omission of certain weapon-like design features that the statute's requirement for a "plus" factor is met only by the inclusion of some tangible material that transforms an explosive device into a weapon. On the contrary, both the statute and the cases make clear

---

[3]To the extent that the district court suggested that Hammond's device was not a weapon because it was neither well-designed nor highly destructive, we disagree. The statute does not require that a device be highly destructive in order to be classified as a destructive device. *United States v. Markley*, 567 F.2d 523, 526 (1ˢᵗ Cir. 1977) ("neither 'highly' nor any other modification of 'destructive device' is used in the legislation defining destructive device" in the statute). Furthermore, the statute does not require the design of an explosive device be "professional." *Id.* at 526-27 ("[t]he statutory purpose would be ill-served by an interpretation which excluded from coverage 'home-made- bombs'"). *See also United States v. Peterson*, 475 F.2d 806, 811 (9ᵗʰ Cir. 1973) (affirming conviction for constructing a home-made incendiary device); *United States v. Morningstar*, 456 F.2d 278, 281-82 (4ᵗʰ Cir. 1972). Nor is there any requirement that the device be successful. *United States v. Ragusa*, 664 F.2d 696 (8ᵗʰ Cir. 1981); *United States v. Evans*, 526 F.2d 701 (5ᵗʰ Cir. 1976). In both *Ragusa* and *Evans*, jury convictions were upheld despite the fact that the devices failed to detonate. In *Evans*, we said, "[t]he statute apparently does not require that a device be successfully detonated before it can be considered a bomb." *Id.* at 707. In *Ragusa*, the Eighth Circuit noted that "it is not necessary that the device actually function as intended." *Id.* at 700. In sum, the statute does not require that Hammond's design for his explosive device be the best one, or even that it produce a device capable of exploding. The statute requires only that the device be *designed as a weapon*.

that no particular design is required for a destructive device to be designed as a weapon. Rather, the critical inquiry is whether the device, as designed, has any value other than as a weapon. *United States v. Johnson*, 152 F.3d 618, 628 (7th Cir. 1998). In this inquiry, the presence of design features that eliminate any claimed entertainment or other benign value supports a finding that the device was designed as a weapon. *Id.*

On the other hand, evidence that does not unambiguously support the inference that the explosive device has no legitimate social value or use does not support a finding that the device was designed as a weapon. Hammond's defense was that he constructed a firecracker, not a weapon. The government's own experts characterized Hammond's device as a "firecracker." The government's witnesses testified to Hammond's long-time fascination with constructing such firecrackers. The government's expert testified that the powders used in the device were either not explosive, or were "low explosive" of the type used for firecrackers. "A firecracker," as the Seventh Circuit has noted, has a useful social and commercial purpose." *Johnson*, 152 F.3d at 627.[4]

---

[4]The only evidence at trial that Hammond's device was not a firecracker was offered by the government's expert who opined that it did not meet the definition of "firecracker" under Title 15 of the United States Code. As the district judge noted, the only provision to which Campbell could have been referring is Title 15, United States Code, Section 1261, which deals with banned fireworks and with the labeling of fireworks for the safety of children. Importantly,

As the able district judge concluded, "[Hammond's] device was simply an explosive device made of cardboard, glue, candle wax, and tape." Whether the Congress should require registration, tax, and permission for one to make or possess such a device we cannot say; it has not, however, required it yet.

Because we conclude that no reasonable juror could have found beyond a reasonable doubt from the evidence that Hammond's device was not designed for its pyrotechnic qualities, but rather was designed as a weapon, we shall affirm the judgment of the district court.

### III.

The evidence was insufficient to permit the jury to find beyond a reasonable doubt that Hammond's device was designed as a weapon. There being no other reversible error, the judgment of the district court setting aside the verdict and entering a judgment of acquittal is AFFIRMED.

---

the definitions in Title 15 apply only to that chapter, and are not applicable to Title 26. *See* 15 U.S.C. § 1261.

13