In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-1942

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEFFREY E. CREEK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 22 CR 40045 — **Staci M. Yandle**, *Judge.*

ARGUED JANUARY 19, 2024 — DECIDED MARCH 6, 2024

Before ST. EVE, KIRSCH, and LEE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* This appeal asks whether a tin can for chewing tobacco could be a "destructive device" within the meaning of the National Firearms Act. Yes, the district court held—so long as that can is filled with energetic powder, sealed with adhesive, and outfitted with a fuse. Because Jeffrey Creek possessed such a can, the court applied a two-level "destructive device" enhancement in calculating his

Guidelines range. Our precedent supports that enhancement, and his other grounds for appeal fail too. We affirm.

## I. Background

Jeffrey Creek came to the attention of federal agents when United States Customs and Border Patrol agents intercepted a package from China headed to his address. When they opened the package, labeled "TIRE REMOVAL EXTENSION TUBE," they found a silencer. After securing an anticipatory warrant to search Creek's residence, they conducted a controlled delivery of the silencer and then executed the warrant. Inside, they found five firearms (including two "ghost guns" made from plastic parts), magazines, and ammunition.

Creek also told the agents about a "firework" on his dresser. This "firework" comprised a "tin can" that Creek had filled with black powder, rigged with a wick, and covered in tape. Later testing confirmed the can contained 12.35 grams of energetic powder, something like gunpowder. Creek told agents that he wanted the device to be "watertight" because he liked to throw this kind of device into a lake or field to "get a big boom." He also admitted to using meth regularly.

Creek was thereafter charged with unlawfully possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). Creek pleaded guilty to the charge. Probation prepared Creek's presentence investigation report ("PSR"), which disclosed three previous convictions in the criminal history section. Two of those convictions, dating back to 1996 and before, were for unlawfully possessing a silencer, an Illinois crime. These convictions were too old to formally count toward Creek's criminal history score under the Guidelines, which look back only 15 years. The other offense did count, though.

In 1999, authorities caught Creek operating a meth lab where they discovered 22 firearms (including an M16 rifle), a pipe bomb, and a grenade. That conviction counted for three criminal history points.

The PSR also outlined Creek's history of drug abuse. Dating back to high school, he had a history of using cocaine and methamphetamine. After his stint in prison for the 1999 meth lab conviction, he stayed clean for about six years. He relapsed in 2019 and fell into daily methamphetamine use.

Creek's sentencing hearing took place on May 4, 2023. Over Creek's objection, the district court applied a two-level sentencing enhancement for possessing a "destructive device," reasoning that what Creek called a firework was "fully assembled" and essentially a bomb. After all, it "had a metal canister, it contained ignitable powder, and, it was completely sealed and had an ignitable fuse." With this enhancement, the district court calculated Creek's Guidelines range of imprisonment at 41–51 months.

The district court varied upward from this range. Reflecting on Creek's criminal history and advising counsel that it was considering this variance, the court posited that "the Guidelines to some degree understate or underrepresent the seriousness of Mr. Creek's criminal history" because his mid-1990s offenses were relevant despite their exclusion from the Guidelines calculation. It also expressed concern over Creek's possession of "ghost guns," which came with an "increased risk associated with untraceable weapons."

After Creek's allocution, the district court returned to the concern that he was dangerous and beyond deterrence. Dispatching Creek's argument that he had not hurt anyone, the

district court stated: "The headlines are riddled with situations and cases that are similar," referring to mass shootings.

Summing up its reasoning, the court leaned on the sentencing factors set forth in 18 U.S.C. § 3553(a), explaining that "[Creek's] personal history, … criminal history, the nature and circumstances of this offense, the need to promote a respect for the law, the need to attempt to address specific deterrence … the combination of his acts containing explosive devices and his use of dangerous drugs, including methamphetamine" justified a stiff sentence.

The court went on: "the most important thing to this Court in this case is the need to protect the public from future crimes by Mr. Creek. I will not shrug off his conduct as not hurting anybody. I think the public is at a significant risk."

All told, the district court imposed a sentence of 96 months' imprisonment—45 months above the top end of Creek's Guidelines range. The court confirmed that defense counsel neither needed further explanation on the § 3553(a) factors nor felt that it had not addressed the main arguments in mitigation.

## II. Analysis

This appeal raises three disputes about Creek's sentence. We start with the destructive device enhancement, then turn to Creek's other arguments about his criminal history score and the district court's explanation for his sentence.

### A. Destructive Device Enhancement

To contest his two-level enhancement, Creek claims his makeshift explosive was just a firework. If he is correct, this would bear on his Guidelines range.

Section 2K2.1(b)(3)(A) of the Sentencing Guidelines calls for a two-level increase in the defendant's offense level if the offense involved "a destructive device" that is not a "portable rocket, missile, or a device for use in launching a portable rocket or a missile" (those latter get a much weightier enhancement). The provision adopts the National Firearms Act's definition of "destructive device" in applying the enhancement for possessing them. The Act provides:

> The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb … or (F) similar device; (2) [certain cannonlike large-bore devices]; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device … and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon …. 26 U.S.C. § 5845(f).

The Act thus treats a "bomb" differently from a "combination of parts." A "bomb" is facially a "destructive device" under subsection (f)(1). But a "combination of parts" is a "destructive device" under subsection (f)(3) only if it is "designed" to convert a device into a destructive device or the parts are intended to be readily assembled into such a device. *See United States v. Copus*, 93 F.3d 269, 272 (7th Cir. 1996). And under either rubric, devices "neither designed nor redesigned for use as a weapon" enjoy an exception.

That brings us to the crux of Creek's argument on appeal. He wanted the district court to proceed under subsection (f)(3), with its subjective intent inquiry, rather than the

subsection (f)(1) rule. In support, Creek relies on one of our leading "destructive device" precedents, *United States v. Johnson*, 152 F.3d 618 (7th Cir. 1998). On Creek's read of *Johnson*, subsection (f)(1) applies only when the device is unambiguously a bomb or similar device. But, he says, a device that has other, licit purposes cannot fall within subsection (f)(1)—instead analysis must proceed under (f)(3) and fold in its subjective intent inquiry. Creek finally argues that fireworks *do* have a licit purpose and says it follows that the district court should have considered his subjective intent.

Creek's argument tracks with *Johnson* to an extent. It is true, for example, that we have held a "firecracker has a useful social and commercial purpose." *Id.* at 627. It is also true that we have set up a device's "legitimate social purpose" (or lack thereof) as the "ultimate issue" in determining whether a weapon's "design" places it within the statute. *Id.* at 626. But that does not save Creek.

Where Creek goes wrong is assuming a bare assertion that the device he possessed was a "firework" sufficed to head off (f)(1)'s application. But the district court looked at our precedent placing a device in the (f)(1) category that exhibited four features: a metal casing, an adhesive seal, explosive powder, and a fuse. *Copus*, 93 F.3d at 272. Then it determined Creek's device shared those four characteristics and was "fully assembled." That amounted to a factual finding that the device was an (f)(1) "bomb … [or] similar device," not a "combination of parts" as in (f)(3).

We review that finding for clear error only. *United States v. Barker*, 80 F.4th 827, 834 (7th Cir. 2023). There was none. We have explained that devices are "both built like bombs and … capable of producing bomb-like effects" when they include "a

metal casing containing explosive powder that was epoxied shut and … a fuse." *Copus*, 93 F.3d at 273. Creek's device checked all those boxes, with the slight variation that tape, not epoxy, sealed his explosive. It was proper to proceed under (f)(1) for this "fully assembled" device. That is what the district court did, so we need not address Creek's subjective intent argument.

The *Johnson* language Creek relies on does not compel a different result. Nor need we decide whether his take on the case—that an object that has "both a legitimate and an illegitimate use" can fall only within (f)(3)—is correct. We have no trouble concluding that Creek's object had no legitimate use. *Id.* at 628. Even if Creek planned to use his contraption as a firework, that is irrelevant. This was a fully assembled destructive device under (f)(1), as *Copus* and *Johnson* explain. That ends the inquiry.

Creek also argues that even if his "firework" otherwise fell within the definition of a "destructive device," it nevertheless was not such a device because it falls within § 5845(f)'s "neither designed nor redesigned for use as a weapon" exception. His argument relies on *United States v. Hammond*, 371 F.3d 776 (11th Cir. 2004). There, the Eleventh Circuit required a "plus factor" to establish that someone designed the explosive as a weapon: "Statutory coverage depends upon proof that a device is an explosive *plus* proof that it was designed as a weapon." *Id.* at 780. Examples of plus factors might include the explosive charge being "surrounded by metal or containing other hard projectiles." *Id.* at 781.

We have never adopted the "plus factor" analysis. Instead, we handle that "designed for use as a weapon" inquiry through the "legitimate social or commercial purpose" test

that Creek has now failed. Besides, Creek's device was "surrounded by metal," so even under the *Hammond* test he would struggle. *Id.* The can here is a far cry from the "cardboard tube explosive device" in that case, which would have "propelled [nothing] but bits and pieces of cardboard." *Id.* at 781, 780.

In short, the district court properly imposed the destructive device sentencing enhancement.

**B. Sentencing Challenges**

Creek also raises four other challenges to his sentence. First, he says the district court mismanaged his criminal history score by considering stale offenses that the Guidelines do not. He next contends the district court rested its sentence, in part, on improper speculation. He then argues the district court did not properly consider his substance abuse disorder as a mitigating factor. And finally, he charges the court with imposing a substantively unreasonable sentence. All fail.

**1. Criminal History Score**

Creek first complains the district court erred by looking back too far in assessing his criminal history. Recall that in the mid-1990s, Creek twice pleaded guilty to possessing a silencer. But in calculating a defendant's criminal history score, the Sentencing Guidelines do not take into account a defendant's conduct dating back more than fifteen years before the convicted offense (unless the resulting imprisonment extends into the fifteen-year lookback). *See* U.S.S.G. § 4A1.2(e)(1). The district court, therefore, could not include these old convictions in Creek's criminal history score. Nor did it.

The district court did, however, consider them in varying upwards from Creek's Guidelines range. Creek says the district court should have explained itself more fully. He notes

that under U.S.S.G. § 4A1.3(c)(1), a "court shall specify in writing" "the specific reasons why the applicable criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes" when making an upward departure. This was not a departure, though—it was a variance. Those get a more deferential, holistic review. *See United States v. Settles*, 43 F.4th 801, 805 (7th Cir. 2022).

That is partly why we have reaffirmed, time and again, that district courts are "entitled to consider the defendant's full criminal history and to impose a sentence tailored to his record." *United States v. Vasquez-Abarca*, 946 F.3d 990, 995 (7th Cir. 2020); *see also United States v. Griffin*, 793 Fed. App'x 424, 426 (7th Cir. 2019). Indeed, this is entirely consistent with the maxim that "a sentencing judge has the discretion to disagree … with a particular provision of the Sentencing Guidelines." *United States v. Rosales*, 813 F.3d 634, 637 (7th Cir. 2016). Sentencing judges exercise discretion. That—and not anything improper—is what happened here.

The district court found that "the Guidelines to some degree understate or underrepresent the seriousness of Mr. Creek's criminal history." In particular, the district court mused that the age of Creek's convictions—"20 years ago, or what have you"—only "makes a difference when there's no relationship or any concern with the current offense conduct. But that's not the case here." Citing "a continuum between that previous criminal history" and Creek's current offense, the court determined an upward variance was appropriate. This explanation was sufficient.

### 2. Public Safety

Creek also takes issue with the district court's comments about his possession of "ghost guns." At the sentencing hearing, Creek argued in mitigation that he did not hurt anyone, preferring to collect guns rather than shoot them at people. The district court dismissed that argument, explaining:

> The headlines are riddled with situations and cases that are similar. And family, friends, folks in general, when they talk about it, or talk about how there was no indication, they were shocked and surprised that certain individuals engaged in conduct that did hurt people. I'm not putting that on Mr. Creek. But what I am saying is, again, this Court will not bury its head in the sand when we got a person possessing silencers and ghost guns and explosive devices.

Creek reads this portion of the transcript to premise the sentence on "speculation or unfounded allegations." *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009). That would be error, for "due process requires that sentencing determinations be based on reliable evidence." *Id.* Still, a sentencing court may "situate a defendant's firearm offense against the backdrop of statistics and observations about widespread gun violence in the area." *United States v. Saldana-Gonzalez*, 70 F.4th 981, 984 (7th Cir. 2023) (cleaned up).

The district court's concerns here fall into that latter, permissible category. Far from speculating about Creek, the district court set him apart, clarifying: "I'm not putting that on Mr. Creek." The court only identified the potential for Creek

to go from gun collector to gun user. There was no error in tailoring Creek's sentence to mitigate that risk.

### 3. Drug Use

Next Creek accuses the district court of skipping over his drug-use mitigation argument. At sentencing, he urged the court to impose a lower sentence to account for his substance abuse disorder. But he waived any claim that the district court failed to consider this mitigation argument by opting not to raise it at sentencing. We have encouraged district courts to "inquire of defense counsel whether they are satisfied that the court has addressed their main arguments in mitigation." *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013). If counsel answers in the affirmative, he waives a later challenge for failure to address an argument on appeal. *Id.* This district court heeded that call, and Creek's lawyer indicated he was satisfied. That is waiver.

Even on the merits, we would reach the same result. Drug abuse might have some mitigating impact in a case about money—fraud or the like—because the substance abuse disorder engenders financial desperation. *See, e.g.*, *United States v. Dixon*, 527 Fed. App'x 524, 526 (7th Cir. 2013) (district court could conclude conspiracy involvement "fueled in large measure by [the defendant's] own addiction and her physical need for drugs"). The district court was entitled to find mitigation absent here. Creek did not need to own guns to feed his habit, and (as the district court observed) his drug use makes the cache of illegal guns more worrisome.

### 4. Substantive Reasonableness

Last, Creek complains that the district court imposed a substantively unreasonable sentence that was dispropor-

tionately severe for his conduct. He bears a heavy burden, for we review challenges to the substantive reasonableness of a sentence only for abuse of discretion. *United States v. Miles*, 86 F.4th 734, 743 (7th Cir. 2023). The ultimate question is whether the district judge "imposed a sentence for logical reasons that are consistent with the § 3553(a) factors" that govern sentencing. *Id.* Even for an above-Guidelines sentence like we face here, we "will not presume a sentence to be unreasonable." *United States v. Hendrix*, 74 F.4th 859, 871 (7th Cir. 2023).

One of the key factors is "the need for the sentence imposed … to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). This formed the foundation for Creek's above-Guidelines sentence. The district court's explanation had a consistent theme: Creek is dangerous. "[T]here is an absolute need to protect the public from Mr. Creek," the court averred. It went on. "[T]he most important thing to this Court in this case is the need to protect the public from future crimes by Mr. Creek." Further still: "I think the public is at a significant risk."

The factors also call on district courts to consider the need "to afford adequate deterrence to criminal conduct." § 3553(a)(2)(B). Here too the court's message was plain: "I'm not sure that anything will deter Mr. Creek at this point." It is entitled to that judgment—and equally entitled to vary Creek's sentence accordingly.

\*       \*       \*

The judgment of the district court is

AFFIRMED.