In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 23-2374

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAN R. KOWALSKI,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cr-00226-2 — **Virginia M. Kendall**, *Judge.*

———————————

ARGUED APRIL 3, 2024 — DECIDED JUNE 6, 2024

———————————

Before ST. EVE, KIRSCH, and LEE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Jan Kowalski used and abused her
position as an attorney to shield her brother's assets in bank-
ruptcy, hiding approximately $357,000 in her attorney trust
account. She then obfuscated the concealment by invoking at-
torney-client privilege, lying under oath, and fabricating doc-
uments. She now appeals her within-Guidelines sentence of
37 months' imprisonment, arguing that the district court
erred in applying two enhancements in calculating her

Sentencing Guidelines range: the § 2B1.1(b)(10)(C) sophisti-
cated-means enhancement, and the § 3B1.3 abuse of position
of trust enhancement. She also argues her sentence is substan-
tively unreasonable. We affirm.

## I. Background

### A. Factual Background

Jan Kowalski, an Illinois attorney, came to her brother
Robert Kowalski's aid after he filed for bankruptcy in 2018—
first concealing Robert's assets and later lying to the bank-
ruptcy court.

#### 1. Concealing Assets

Kowalski's involvement in Robert's bankruptcy proceed-
ings began around the summer of 2018. Using her Interest on
Lawyers Trust Account ("IOLTA")—a trust account designed
for lawyers to hold clients' and third parties' property sepa-
rate from their own assets—Kowalski concealed approxi-
mately $357,000 of her brother's assets from his creditors and
the bankruptcy trustee.

Kowalski accomplished this feat through dozens of IOLTA
transactions. Between August and October 2018, she depos-
ited around $350,000 in cashier's checks that almost always
listed Robert as both remitter and payee, and thousands more
in checks and money orders payable to either Robert or one
of his business entities for "rent." She also withdrew thou-
sands of dollars to purchase property on two occasions. On
the first, she withdrew around $2,500 to use as earnest money
in a failed attempt to purchase property in the name of a ficti-
tious trust of which Robert was the beneficiary. And on the
second, she withdrew around $75,000 to successfully pur-
chase property in Robert's name. Later, she used yet more

funds from her IOLTA to purchase another $350,000 of cashier's checks payable to or for the benefit of Robert. Over the next several months, she redeposited around $325,000 into her IOLTA, and then withdrew another $240,000 after that.

### 2. Bankruptcy Proceeding Misconduct

After entering an appearance on Robert's behalf in the bankruptcy proceedings in November 2018, Kowalski took steps to hide her concealment of Robert's assets.

Kowalski's deceitful activities before the bankruptcy court were numerous. She began with an array of written and verbal false statements. In a motion to quash subpoenas seeking records from her IOLTA, for example, she falsely represented that the IOLTA funds "represent[ed] both her earned fees, settlement funds, and her clients' security retainers," and further invoked attorney-client privilege to insist that "[a]ny financial transaction between … [her] and her clients" was protected. She reiterated similar false statements in a later filing.

Kowalski continued her false statements in a hearing before the bankruptcy court. Under oath, she testified that the cashier's checks were legitimate attorney's fees stemming from agreements with Robert's business entities; that the withdrawn-then-redeposited cashier's checks were loans she intended to, but did not, make to Robert; and that she withdrew more than $200,000 from her IOLTA as part of her regular practice of zeroing out the account at the end of the year.

Then, compounding this deception, Kowalski introduced exhibits purporting to be IOLTA client ledgers and retention agreements to support her false statements. She later admitted to fabricating these documents.

In subsequent proceedings, the bankruptcy trustee confronted Kowalski with the inconsistencies between her personal bank records and earlier testimony. Again under oath, Kowalski testified that she gave the withdrawn IOLTA funds to an unidentified "client" or "business partner." She refused to identify the individual, and the district court placed her in contempt. She ultimately named Lawrence Lis several weeks later. Lis, however, denied ever receiving funds from Kowalski.

Kowalski failed to appear at a bankruptcy court hearing the next month. Her attorney informed the court that Kowalski was at her law office with the police, filing a report that money had been stolen from her office.

Finally, in a hearing a few months later, Kowalski again lied under oath, insisting she had given the withdrawn funds to Lis. But this time, she added that Lis later returned the money, which she put in a lockbox in her office. She testified that she later discovered the money had been stolen, speculating that "it was agents of the trustee." And once more, she insisted that the money did not belong to the trustee but was instead money she had "earned."

**B. Procedural Background**

A grand jury charged Kowalski and several others in a 37-count indictment. For her part, Kowalski faced four counts of bankruptcy fraud in violation of 18 U.S.C. § 157(1)–(3), and one count of concealing assets from the bankruptcy trustee in violation of 18 U.S.C. § 152(1). She pleaded guilty only to the concealing assets charge.

The United States Probation Office prepared a presentence investigation report, which recommended applying four

sentencing enhancements. Two are relevant here: a two-level enhancement under U.S.S.G. § 2B1.1(b)(10)(C), on the ground that Kowalski employed "sophisticated means" in committing the offense, and a two-level enhancement under U.S.S.G. § 3B1.3, on the ground that she abused a position of trust or used a special skill to facilitate or conceal the offense.

Kowalski objected to both enhancements. As to the former, she argued that her conduct was neither particularly complex nor intricate, and that she did not know her brother's trusts were fictitious. As to the latter, she argued that she had no *bankruptcy* law expertise and thus did not use any special skills. The district court overruled the objections. It found Kowalski employed sophisticated means by fabricating false client ledgers and retention agreements and providing false testimony to support those documents. And it found that Kowalski abused a position of trust by relying on her status and credibility as an attorney to cover up the offense

Based on Kowalski's offense level of 21 and criminal history category of I, the court calculated a Sentencing Guidelines range of 37 to 46 months' imprisonment. It ultimately imposed a 37-month sentence, which Kowalski now appeals.

## II. Analysis

Kowalski lodges three challenges to her sentence: two procedural and one substantive.

When a defendant challenges a sentence both procedurally and substantively, "[w]e review a district court's sentencing decision in two steps." *United States v. Oregon*, 58 F.4th 298, 301 (7th Cir. 2023). First, we assess de novo whether the district court committed any "significant procedural error," including whether it correctly calculated the applicable

Guidelines range. *United States v. Davis*, 43 F.4th 683, 687 (7th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Second, if the sentence is procedurally sound, we "review the substantive reasonableness of [the] sentence under an abuse of discretion standard." *United States v. Walsh*, 47 F.4th 491, 496 (7th Cir. 2022).

## A. Procedural Challenges

We begin with Kowalski's procedural challenges. She argues that the district court erred by improperly applying the §§ 2B1.1(b)(10)(C) and 3B1.3 enhancements.

In assessing these challenges, we review the district court's underlying factual findings for clear error, but review de novo whether those findings "adequately support the imposition of the enhancement[s]." *United States v. Barker*, 80 F.4th 827, 834 (7th Cir. 2023) (quoting *United States v. Brown*, 843 F.3d 738, 742 (7th Cir. 2016)). A finding of fact is clearly erroneous only when, after considering all the evidence, we are "left with the definite and firm conviction that a mistake has been made." *United States v. Dickerson*, 42 F.4th 799, 804 (7th Cir. 2022) (quoting *United States v. Cruz-Rea*, 626 F.3d 929, 938 (7th Cir. 2010)).

### 1. Sophisticated-Means Enhancement

The sophisticated-means enhancement applies where the offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). "'[S]ophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." § 2B1.1 cmt. n.9(B). The enhancement "does not require a brilliant scheme, just one that displays a greater level

of planning or concealment than the usual fraud case." *United States v. Lundberg*, 990 F.3d 1087, 1097 (7th Cir. 2021) (cleaned up).

Kowalski argues that merely using her own bank account to conceal her brother's assets was unsophisticated and "on par with a typical bankruptcy fraud." The district court did not err in rejecting this argument. Indeed, Kowalski's scheme surely "exceeded the garden-variety scheme" to conceal bankruptcy assets, *United States v. Friedman*, 971 F.3d 700, 716 (7th Cir. 2020), which requires only that the defendant "knowingly and fraudulently conceal[] from a … trustee … any property belonging to the estate of a debtor," *see* 18 U.S.C. § 152(1). Kowalski deposited and then withdrew dozens of cashier's checks from her IOLTA to conceal huge sums of money from the bankruptcy trustee. She then attempted to use these funds to purchase property in the name of a fictitious trust benefiting her brother. This conduct alone justifies the enhancement. *See* § 2B1.1 cmt. n.9(B) ("[H]iding assets or transactions … through the use of fictitious entities … ordinarily indicates sophisticated means.").

Yet Kowalski's conduct went much further. She concocted an elaborate and continually evolving story to cover up her activity: invoking the attorney-client privilege to shield her IOLTA funds from discovery, testifying falsely in multiple hearings, and fabricating documents to support her false testimony. She then insisted that she gave $250,000 to an unidentified individual, but later that the money had been stolen.

Together, these facts amply support the finding that Kowalski employed sophisticated means to conceal her brother's assets. *See Lundberg*, 990 F.3d at 1098 (finding the enhancement proper where the defendant falsified tax forms to

support a lease application); *Friedman*, 971 F.3d at 717 (same where the defendant created "phony corporate resolution documents"); *United States v. Ghaddar*, 678 F.3d 600, 603 (7th Cir. 2012) (same where the defendant used "elaborate tactics to conceal the source of … money").

It makes no difference that Kowalski did not—as in some of our cases—receive a pecuniary benefit, conceal the source of the cashier's checks, disguise herself, or use foreign bank accounts. These are simply examples of tactics that may justify the sophisticated-means enhancement, but they are not necessary to its application. Rather, the "essence of the definition" of "sophisticated means" is "merely deliberate steps taken to make the offense … difficult to detect." *United States v. O'Doherty*, 643 F.3d 209, 220 (7th Cir. 2011) (quoting *United States v. Kontny*, 238 F.3d 815, 821 (7th Cir. 2001)). Kowalski layered deceit upon deceit: she obscured the source of the money by continually shifting it in and out of her IOLTA and attempting to purchase property, and covered up that activity with a series of elaborate false statements and documents.

The district court did not err in applying the sophisticated-means enhancement.

### 2. Abuse of a Position of Trust Enhancement

Section 3B1.3 provides for a two-level enhancement "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. "Public or private trust" refers to a position "characterized by professional or managerial discretion," meaning "substantial discretionary judgment that is ordinarily given considerable deference." § 3B1. cmt. n.1. For the enhancement

to apply, "the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult)." *Id.* In short, the enhancement is appropriate if the defendant (1) occupied a position of trust, and (2) abused the position in a manner that significantly facilitated the offense. *United States v. Gellene*, 182 F.3d 578, 596 (7th Cir. 1999).

We have little trouble concluding both criteria are satisfied here. Kowalski, as a lawyer representing her brother before the bankruptcy court, occupied a position of public trust. *See id.*; *United States v. Harrington*, 114 F.3d 517, 519 (5th Cir. 1997) ("The integrity of our judicial system inextricably is intertwined with the integrity of our trial lawyers. Consequently, it cannot be gainsaid that lawyers occupy a position of public trust."). Indeed, we already held as much in *Gellene*, 182 F.3d at 596–97 (holding that "a bankruptcy lawyer representing a large corporate client in bankruptcy.… held a position of considerable professional discretion" and thus "occupied a position of trust"). That Kowalski was not specifically a *bankruptcy* lawyer is of no moment. Lawyers enter the courtroom as officers of the court with professionally bestowed levels of credibility and discretion and thus occupy a position of public trust.[*]

---

[*] Kowalski focuses her argument on why she did not "use[] a special skill" for purposes of the § 3B1.3 enhancement. But the enhancement applies disjunctively if the defendant either "abused a position of public or private trust, *or* used a special skill." *See* § 3B1.3 (emphasis added). In any event, Kowalski's arguments in this regard are likewise fruitless. *See*

Nor did the district court err in finding that Kowalski abused this position of public trust in a manner that significantly facilitated the offense. Kowalski hid hundreds of thousands of dollars in her IOLTA—an account uniquely available to lawyers and dubbed, after all, "*trust* account." She then invoked the attorney-client privilege to avoid disclosing IOLTA records that would expose this concealment. She also twice filed documents containing false statements with the bankruptcy court—representing first that the funds held within her account were earned fees, and second that a deposit into her IOLTA was not the property of Robert's bankruptcy estate.

The district court did not err in applying the abuse of trust enhancement. Kowalski's sentence is procedurally sound.

## B. Substantive Reasonableness

Kowalski last argues that her 37-month sentence is substantively unreasonable. In reviewing for substantive reasonableness, "[t]he ultimate question is whether the district judge 'imposed a sentence for logical reasons that are consistent with the § 3553(a) factors' that govern sentencing." *United States v. Creek*, 95 F.4th 484, 492 (7th Cir. 2024) (quoting *United States v. Miles*, 86 F.4th 734, 743 (7th Cir. 2023)). Kowalski "bears a heavy burden, for we review challenges to the substantive reasonableness of a sentence only for abuse of discretion." *Id.* Where, as here, a sentence falls within the properly calculated Guidelines range, "our review is even more

---

§ 3B1.3, cmt. n.4 ("'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, *lawyers*, doctors, accountants, chemists, and demolition experts." (emphasis added)).

deferential: we presume that the sentence is reasonable." *United States v. Taylor*, 907 F.3d 1046, 1051 (7th Cir. 2018).

Kowalski fails to overcome this presumption. She argues that her sentence is unreasonable given the nature and circumstances of her offense and her history and characteristics. *See* 18 U.S.C. § 3553(a)(1). But, despite Kowalski's attempts to minimize her conduct, the district court clearly and thoroughly tailored the sentence to the unique nature and circumstances of the offense. The need for the sentence imposed to "reflect the seriousness of the offense" and "promote respect for the law"—key factors for a sentencing court to consider, *see* 18 U.S.C. § 3553(a)(2)(A)—weighed heavily on the district court's mind in fashioning Kowalski's sentence. The court correctly observed that Kowalski's crime was "extremely serious" because she attempted to conceal more than $350,000 from the bankruptcy trustee, and did so at great public expense given the months it took to unwind the criminal conduct and related deceit. The court further found that the "most important[]" aggravating aspect of Kowalski's conduct was that it had undermined the integrity of the court, faith in the judiciary, the reputation of lawyers, and the rule of law.

The court also gave more than fair consideration to Kowalski's mitigating family circumstances. *See United States v. Wood*, 31 F.4th 593, 601 (7th Cir. 2022) ("Sentencing courts 'need not mention every potential mitigating factor in detail.'" (quoting *United States v. Ballard*, 12 F.4th 734, 745 (7th Cir. 2021))). Indeed, the court specifically discussed these circumstances, which undoubtedly played a role in its decision to impose a low-end-of-the-Guidelines sentence.

In sum, the court's sentence reflected its balancing of the mitigating and aggravating circumstances as required by

§ 3553(a). "The law required no more of the district court." *United States v. Elmer*, 980 F.3d 1171, 1178 (7th Cir. 2020). That Kowalski's selective review of the facts leads her to believe her conduct warranted a lesser sentence does not undermine the district court's exercise of its broad discretion at sentencing: We will not "substitute our judgment for that of the district court, which 'is better situated to make individualized sentencing decisions.'" *Wood*, 31 F.4th at 600 (quoting *United States v. Daoud*, 980 F.3d 581, 591 (7th Cir. 2020)).

Kowalski's bottom-of-the-Guidelines sentence is substantively reasonable.

\*     \*     \*

The judgment of the district court is

AFFIRMED.